# Exhibit A

# Exhibit A

John White, Esq., S.B.#1741                           E-filed on _____
White Law Chartered
Twentieth Century Building
335 West First St.
Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com
Attorney for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

ROGER PIERRE BAYLOCQ,

               Debtor-in-Possession.

_____/

CASE NO:  BK-N-10-51372-gwz

Chapter 11

**ROGER PIERRE BAYLOCQ'S MARCH
4, 2011 PLAN OF REORGANIZATION**

**Hearing Date:**    _____ 2011
**Hearing Time:**    _____pm
**Time Required:**   30 minutes

TABLE OF CONTENTS

I. INTRODUCTION
II. DEFINITIONS                                                                                      4
    A. Scope of Definitions; Rules of Construction                              4
    B.  Definitions                                                           4
    C. Rules of Interpretation                                                7
    D. Computation of Time                                                    7
III.  CLASSIFICATION OF CLAIMS AND INTERESTS                                   7
    A. Generally                                                              7
    B. Classes                                                                8
    C. Unclassified Claims                                                    8
IV.  TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN               8
    A. Impaired and Unimpaired Classes or Interests                         8
    B. Unclassified Claims and Demands                                      8
        1. Administrative Claims.                                        8
        2. Priority Claims.                                              9
        3. Trustee Fees.                                                 9
    C. Classified Claims                                                      9
    D. Right to Early Payment.                                                12
V.  A SUMMARY OF THE TREATMENT OF THE EXECUTORY CONTRACTS
UNDER THE PLAN                                                                        12
VI. IMPLEMENTATION OF THE PLAN                                                 13
    A.  Plan Funding.                                                         13
    B.  Plan Distributions.                                                   13
    C.  Unclaimed Property.                                                   14
    D.  No Liability for Tax Claims.                                          14
VII.  RESOLUTION OF DISPUTED CLAIMS                                            14
    A. Disputed Claims.                                                       14
        1. Objection Deadline.                                          14
        2. Prosecution of Objections.                                   14
    B.  Defenses and Counterclaims.                                           15
    C.  Estimated Claims.                                                     15
VIII DEFAULT; REMEDIES                                                                 15
    A. Event of Payment Default                                               15
    B. Event of Non-Monetary Default.                                         15
    C.  Remedies Upon an Event of Payment Default or Non-Monetary Default 15
    D.  Alternative Remedy of Secured Creditors.                              16
IX INJUNCTION                                                                          16
X.  REQUEST FOR APPLICATION OF 11 U.S.C. § 1129(b)                       16

XI. MODIFICATION OF PLAN                                              16

XII.  MISCELLANEOUS                                                   16

    A.  Contemplated Compensation for Services              16

    B.  Sales                                               17

    C.  Tax Consequences                                     17

    D.  Exculpation                                          17

    E.  Vesting.                                             17

    F.  Discharge.                                           17

    G.  Retention and Enforcement of Causes of Action.       18

    H.  Unknown Creditors.                                   18

    I.  Entire Agreement.                                   18

    J.  Headings.                                           18

    K.  Consent to Jurisdiction.                             18

    L. Successors and Assigns.                              18

    M. Unmarked Ballots.                                    18

    N.  Governing Document Where Conflict Exists.           18

    O.  Retention of Jurisdiction                           19

Pursuant to Section 1121 and 1123 of the United States Bankruptcy Code, 11 U.S.C. §§ 1121 and 1123, the Debtor and debtor-in-possession in this case ("Debtor"), proposes this Roger Pierre Baylocq Plan of Reorganization (the "Plan").

# I. INTRODUCTION

The Debtor filed his petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on April 15, 2010 (the "Petition Date").

The Debtor provides the following summary of the provisions of this Plan for informational purposes only. The terms of the Plan shall control any inconsistency between this summary and the terms of this Plan. Capitalized terms used in this summary are defined below in the Definitions section of the Plan.

The Revested Debtor, Roger Pierre Baylocq will continue to operate his real estate development business in Reno, NV.

**The Plan will be funded by ongoing operations.**

The Plan embodies a proposal to creditors to compromise their respective Claims in exchange for the treatment proposed under the Plan. The Plan must receive creditor approval and the Court must find that it meets the requirements of the law in order to be confirmed. If this Plan is not confirmed, then the Court may, among other things:

    (a)    dismiss the bankruptcy cases;

    (b)    consider another plan; or

    (c)  convert the bankruptcy cases from Chapter 11 proceedings to Chapter 7 proceedings, with the assets of the Debtor being sold in liquidation and the proceeds distributed in accordance with the priority provisions of the Bankruptcy Code.

Creditors are reminded that the Debtor has prepared and filed a Disclosure Statement that provides information about the Debtor and his past operations. That Disclosure Statement has been approved by the Court.

# II. DEFINITIONS

### A. Scope of Definitions; Rules of Construction

Unless the context requires otherwise, the following terms will have the following meanings when used in initially capitalized form in the Plan. Such meanings will be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules will have the meaning ascribed to such term by the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). The rules of construction set forth in Section 102 of the Bankruptcy Code will apply in construction of the Plan. All references to the "Plan" herein will be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes (and any amendments thereto made in accordance with the Bankruptcy Code or order of the Court).

### B. Definitions

1. **"A & B Logistics Inc."** 300 Kietzkie Lane, Reno, NV is a Nevada close corporation,

formed March 8, 2004. It is 50% owned by Debtor and 50% owned by Louis Alessandria. It is described further in the Disclosure Statement.

2. **"Allowed Claim"** means every Claim against either Debtor (i) as to which a proof of claim has been filed with the Court within the time fixed by the Court or otherwise deemed timely filed under applicable law, or, if such claim arises from the Debtor's rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or (ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtor or amended by the Debtor as of said date, and is liquidated in an amount and undisputed; and in either of the above events, as to which no objection to allowance of such Claim or request for subordination thereof has been filed within any applicable period fixed by the Court or as to which an order allowing such claim and establishing priority has become final and non-appealable. An allowed Secured Claim shall include all accrued interest and attorney's fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys fees are reasonable or are approved by the Court after notice and hearing. As Debtor was insolvent on the Petition Date, allowed unsecured Claims shall not bear post-petition interest. A timely filed proof of Claim will supersede any scheduled Claim.

3. **"Alpine Investments, LLC"** is a defunct Nevada Limited Liability Company which ceased operations in 2009.

4. **"Bankruptcy Code"** means the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

5. **"Bankruptcy Court"** or "Court" means the United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of this Chapter 11 case.

6. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the official Bankruptcy Forms, as amended from time to time, and as supplemented by any local rules of procedure adopted by the Court.

7. **"Baylocq Construction Inc."** is a Nevada Corporation that ceased all operations in 2008 and whose Charter has been revoked.

8. **"Baylocq Properties LLC,"** 1275 Stardust St., Reno, NV, is a Nevada Limited Liability Company formed June 5, 2006. It is 100% owned by Debtor.

9. **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. **"Confirmation Date"** means the date on which the Court enters its Order confirming Debtor's Plan of Reorganization, or any subsequently amended plan of reorganization.

11. **"Debtor"** means Roger Pierre Baylocq, an individual, who is the Chapter 11 Debtor in Case No. BK-N-10-51372.

12. **"Disclosure Statement"** means the Disclosure Statement filed by the Debtor, as is may be approved or conditionally approved by the Bankruptcy Court.

13. **"Disputed Claim"** means a claim that has not become an Allowed Claim or as to which a proof of Claim has been filed, or deemed filed under applicable law, as to which an objection has been timely filed and which objection, has not been withdrawn and has not

been overruled or denied by a Final Order.

14. **"EasyMark, LLC,"** 1275 Stardust St, Reno, NV, is a Nevada Limited Liability Company, formed on September 12, 1996, 50% owned by Debtor and 50% owned by April Bjorlin. Its primary asset is the Gateway Inn, a 100 unit motel and restaurant situate at 1275 Stardust St., Reno, NV. Debtor, as the managing member of EasyMark LLC, has caused it to adopt and ratify this Plan and has bound 100% of it (both ownerships interests) and all EasyMark assets to the provisions of this Plan.

15. **"Effective Date"** means the eleventh day following the Confirmation Date, provided any Order of the Court confirming and approving the Plan becomes a Final Order prior to that time; otherwise, "Effective Date" means the next business day after the date on which the Order of the Court confirming and approving the Plan becomes a Final Order, unless the Debtor in his sole discretion after Confirmation determine that the Effective Date shall be earlier.

16. **"Equity Security Interest"** means Debtor's ownership interest in the assets of this estate.

17. **"Federal Judgment Rate"** means the interest rate allowed on federal judgments in effect as of the Effective Date.

18. **"Final Order"** means an order which (i) has not been reversed, stayed, modified or amended; (ii) is no longer subject to appeal or certiorari, review or rehearing; (iii) is conclusive on all matters adjudicated thereby and (iv) is in full force and effect.

19. **"General Unsecured Creditors"** means creditors holding Allowed Class 8 Claims.

20. **"Jazz A LLC"** is a revoked Nevada Limited Liability Company, formed 11/1/2006.

21. **"Petition Date"** means April 15, 2010, the date on which Debtor filed his voluntary petition commencing the above-captioned Chapter 11 case.

22. **"Plan,"** or **"Plan of Reorganization"** means the Roger Pierre Baylocq Plan of Reorganization, together with any amendments or modifications thereto as may hereafter be filed by the Debtor.

23. **"Professional"** means any Court-approved professional providing services to the estate in the Debtor's Chapter 11 case, pursuant to Sections 327 or 1103 of the Bankruptcy Code or otherwise, and the professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

24. **"Professional Fee Claim"** means an administrative claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date.

25. **"Pro Rata"** means, at any time, the proportion that the unpaid face amount of a Claim in a particular Class bears to the aggregate unpaid face amount of all Claims (including Disputed Claims) in such Class, unless the Plan provides otherwise.

26. **"R & L Nevada Holding, LLC,"** 1275 Stardust St., Reno NV is a Nevada Limited Liability Company formed June 1, 2006. It is 50% owned by Debtor and 50% owned by Louis Alessandria. It is further described in the Disclosure Statement.

27. **"Revested Debtor"** means Roger Pierre Baylocq after the Effective Date of the Plan.

28. **"RLL, LLC",** 52 Marne Ave., San Francisco, CA, 94112 is a California Limited Liability Company, formed in 1996, presently in Chapter 11 bankruptcy, Reno Bankruptcy Court (Case No. N-09-54136-GWZ), owned 50% by Debtor and 50% by Louis Alessandria. It is further described in the Disclosure Statement.

29. **"Secured Claim"** means a Claim, other than a setoff Claim, that arose before or after

the Petition Date that is secured by a security interest in or lien upon property, or the proceeds of the sale of such property, in which the Debtor or the estate has an interest, to the extent of the value, as of the Confirmation Date or such later date as is established by the Court, of such interest or lien as determined by a Final Order of the Court pursuant to Section 506 of the Bankruptcy Code or this Plan.

30. **"Secured Creditor"** means a creditor holding an Allowed Secured Claim.

### C. Rules of Interpretation

a. The singular includes the plural and the plural includes the singular.
b. A word in any gender includes all genders.
c. The word "or" is not exclusive.
d. A reference to a person includes its permitted successors and permitted assigns.
e. The words "include," "includes" and "including" are not limiting and shall be deemed to be followed by "without limitation."
f. A reference in a document to an Article, Section, Exhibit, Schedule, Annex or Appendix is to the Article, Section, Exhibit, Schedule, Annex or Appendix of such document unless otherwise indicated. Exhibits, Schedules, Annexes or Appendices to any document shall be deemed incorporated by reference in such document.
g. References to any document, instrument or agreement (i) shall include all Exhibits, Schedules and other attachments thereto, (ii) shall include all documents, instruments or agreements issued or executed in replacement thereof, and (iii) shall mean such document, instrument or agreement, or replacement or predecessor thereto, as amended, modified and supplemented from time to time and in effect at any given time.
h. The words "hereof," "herein" and "hereunder" and words of similar import when used in any document shall refer to such document as a whole and not to any particular provision of such document.
i. References to "days" shall mean calendar days, unless the term "Business Days" shall be used.

### D. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) will apply.

## III.  CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Generally

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and interests. A Claim or interest is classified in a particular class only to the extent that the Claim or interest qualifies within the description of the class and is classified in a different class to the extent the Claim or interest qualifies within the description of that different class. Each class will be mutually exclusive. Pursuant to Section 1123(a)(4) of the Bankruptcy Code, all Allowed Claims of a particular class shall receive the same treatment unless the holder of the particular Allowed Claim agrees to a less favorable treatment of such Allowed Claim.

**B. Classes**

1. Class 1: Dorothy Pabst  The Class 1 Secured Claim of Dorothy Pabst ("Pabst") arises from a promissory note signed by Debtor and secured by property owned by EasyMark, LLC.  EasyMark took title subject to this security. Pabst has filed a Claim in this Case. The Class 1 Secured Claim of Pabst shall be allowed in the amount of $1,030,000, including fees, charges and interest.

2. Class 2:  Fred and Florence Pura.  In respect of Pura's loan, secured by a senior lien on Debtor's 7th St. Duplex, Pura shall be allowed a secured claim in the amount of $32,000, including fees, charges and interest.

3. Class 3: Bank of America.  In respect of Bank of America's loan, secured by a junior lien on Debtor's 7th St. Duplex, Bank of America shall be allowed a secured claim in the amount of $118,000, including fees, charges and interest..

4. Class 4: SunTrust Mortgage, Inc.  In respect of SunTrust's loan, secured by Debtor's Delmonte Lane residence, SunTrust shall be allowed a secured claim in the amount of $600,000, including fees, charges and interest..

5. Class 5: Harvest Time Foundation.  In respect of Harvest Time's claim, secured by Debtor's property at 871-879 McLean St., Fallon, NV, Harvest Time shall be allowed a secured claim in the amount of $200,000, including fees, charges and interest.

6. Class 6: Ronald Corolla.  In respect of Corolla's loan, secured by 845 McLean/840 Cleveland, Fallon, NV, Corolla shall be allowed a secured claim in the amount of $200,000, including fees, charges and interest.

7. Class 7:  Chase Mortgage Company.  In respect of Chase Mortgage's loan, secured by 325 Circle Dr., Reno, NV, Chase Mortgage shall be allowed a secured claim in the amount of $173,688.44 .

1. Class 8: General Unsecured Creditors.  Class 8 is comprised of any creditor holding an allowed unsecured Claim against Debtor, excepting unsecured creditors holding priority or insider Claims.

2. Class 9: (Debtor) Class 9 consists of Debtor's equity in property of the estate after payment of all Allowed Claims.

**C. Unclassified Claims**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, administrative Claims (including but not limited to Professional Fee Claims) and priority Claims are not classified and are excluded from the above-listed Classes. The treatment accorded administrative Claims and priority Claims is set forth in Article III of the Plan.

# IV.  TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A. Impaired and Unimpaired Classes or Interests**

Class 9 is unimpaired and retains all rights and duties except as otherwise noted in this Plan.  Being unimpaired, Class 9 is deemed to have accepted this Plan and has no vote. All other classes are impaired and therefore are entitled to vote on the Plan.

**B. Unclassified Claims and Demands**

**1. Administrative Claims.**

8

Each holder of an Allowed administrative Claim (excluding any holder that agrees to different treatment), including any administrative Claim for real estate and personal property taxes due and payable as of the Effective Date, will receive the amount Allowed for its administrative Claim, in cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, to be paid on the Effective Date; provided, however, that Allowed administrative Claims representing post-petition liabilities, whether or not incurred by law or under contract, will be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating hereto.

*Professional Fee Claims.* Allowed Professional Fee Claims shall be paid, in cash, on the Effective Date. Funds representing any fees not yet approved by the Court shall be held in the Professional's respective escrow account pending approval of the Professional's fees and expenses by the Court after notice and a hearing.

### 2. Priority Claims.

Taxing bodies, including but not limited to the Internal Revenue Service, entitled to priority in accordance with the Bankruptcy Code (as well as any such Claims that are also secured by liens against Debtor) will be paid in equal monthly installments of $1,940, including applicable interest for a period of sixty (60) months from the Petition Date. Priority tax claimants whose claims are partially secured by liens shall (a) retain such liens until such time as the portion of the Claims secured by liens are paid in full and (b) apply monthly installment payments provided for under the Plan first to the secured portion of such claims. Payment of priority Claims shall commence on the Effective Date. They shall not be paid in a manner less favorable than the most favored nonpriority unsecured claim provided for in this Plan.

### 3. Trustee Fees.

All fees required to be paid to the United States Trustee will be paid in full upon confirmation of the Debtor's Plan, and the Debtor shall remain current on such obligations until entry of a Final Decree.

### C. Classified Claims

#### Class 1: Dorothy Pabst (Secured)

Debtor and EasyMark shall execute a new promissory note to Pabst on the Effective Date  All pre and post-petition arrearages on the original (April 1, 2001) note ("Original Pabst Note"). The obligations due under the Original Pabst Note, including arrearages due thereunder shall comprise the principal amount of the loan under a new note (the "New Pabst Note"), which shall be made and executed by the Revested Debtor and EasyMark on the Effective Date. The New Pabst Note shall be secured by the same collateral (with the same priority) as the Original Pabst Note. The Class 1 Secured Claim of Pabst shall be allowed in the amount of $1,030,000, including fees, charges and interest. The Class 1 Claim of Pabst shall be paid, including interest at the rate of eight (8%) percent per annum, in consecutive monthly payments of $6,900 per month commencing on the Effective Date and the fifth (5th) day of each month thereafter until April 1, 2012, whereupon the monthly payment shall be in the amount of $10,212 per month until the New Pabst Note is paid in full. Until  the Class 1 Secured Claim is paid in full, Pabst shall retain her liens in assets to the same extent and priority as such liens existed as of the Petition Date.

Pabst's attorney's fees incurred but unpaid post-confirmation will be paid as a balloon payment at the end of the term of the New Pabst Note.

The Class 1 Secured Claim is impaired under the Plan and the holder shall be entitled to vote to accept or reject the Plan.

### Class 2:  Fred and Florence Pura (Secured)

In respect of the October 30, 1997 $120,000 (original amount) loan of Pura secured by a senior lien on Debtor's 7th St. Duplex, Pura shall be allowed a Secured Claim in the amount of $32,000, which Class 2 Secured Claim shall be paid, including interest at the rate of six (6%) percent per annum in consecutive monthly payments of $700 per month, commencing on the Effective Date and the fifth (5th) day of each month thereafter until the Class 2 Secured Claim is paid in full.  The Class 2 Claim shall be secured by the same collateral (with the same priority) as originally secured her Claim. Upon payment in full to the Class 2 Secured Claim, Pura shall release her lien on Debtor's 7th Street Duplex.

Class 2 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

### Class 3:  Bank of America (Secured)

In respect of the 3/10/2006 $200,000 (original amount) loan of Bank of America secured by a junior lien on Debtor's 7th St. Duplex, Bank of America shall be allowed a Secured Claim in the amount of $118,000, which Class 3 Secured Claim shall be paid, including interest at the rate of three and three/fourths (3.75%) percent per annum in consecutive monthly payments of $500 per month, commencing on the Effective Date and the fifth (5th) day of each month thereafter until the Class 3 Secured Claim is paid in full.  The Class 3 Claim shall be secured by the same collateral (with the same priority) as originally secured the Bank of America Claim. Upon payment in full to the Class 3 Secured Claim, Bank of America shall release its lien on Debtor's 7th Street Duplex.  Any amount due Bank of America in excess of its Allowed Class 3 Secured Claim shall be a General Unsecured Claim.

Class 3 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

### Class 4:  SunTrust Mortgage Company (Secured)

In respect of the 9/1/2005 $900,000 (original amount) loan of SunTrust Mortgage secured by a lien on Debtor's 2370 Delmonte Lane, Reno, home, Sun Trust Mortgage, provided it has a claim in this Case secured by a senior lien on 2370 Delmonte Lane, shall be allowed a Secured Claim in the amount of $600,000, which Class 4 Secured Claim shall be paid, including interest at the rate of four (4%) percent per annum in consecutive monthly payments of $2,700 per month, commencing on the Effective Date and the fifth (5th) day of each month thereafter until the Class 4 Secured Claim is paid in full.  The Class 4 Claim shall be secured by the same collateral (with the same priority) as originally secured the SunTrust Mortgage Claim. Upon payment in full to the Class 4 Secured Claim, SunTrust shall release its lien on Debtor's Delmonte Lane home.  Any amount due SunTrust in excess of its Allowed Class 4 Secured Claim shall be a General Unsecured Claim.

Class 4 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

### Class 5:  Harvest Time Foundation

In respect of the $737,683.31 Secured Claim filed by Harvest Time Foundation, Harvest Time shall be allowed a Secured Claim in the amount of $200,000, which Claim shall bear interest at the rate of four (4%) percent per annum.  Debtor shall make consecutive monthly interest only payments of $667.00 per month, beginning on the Effective Date and the fifth (5th) day of each month.  The principal balance of the Class 5 Secured Claim shall be paid in full five

(5) years from the Effective Date.  The Class 5 Claim shall be secured by the same collateral (with the same priority) as originally secured the Harvest Time 9/27/2006 $425,000 promissory note, plus any lien(s) it holds by reason of any judgment which is not avoided or set aside as preferential. Upon payment in full to the Class 5 Secured Claim, Harvest Time shall release its lien on Debtor's 871-879 McLean St., Fallon Property and any lien obtained on any judgment which also secures the Harvest Time Claim.  Any amount due Harvest Time in excess of its Allowed Class 5 Secured Claim shall be a General Unsecured Claim.

Class 5 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**Class 6:  Ronald Corolla (Secured)**

In respect of the 9/28/2008 $200,000 (original amount) loan of Ronald Corolla secured by a lien on Debtor's 845 McLean/840 Cleveland Fallon property, Ronald Corolla shall be allowed a Secured Claim in the amount of $200,000, which Claim shall bear interest at the rate of six (6%) percent per annum.  Debtor shall make consecutive monthly interest only payments of $1000 per month, beginning on the Effective Date and the fifth (5th) day of each month. The principal balance of the Class 6 Secured Claim shall be paid in full five (5) years from the Effective Date. The Class 6 Claim shall be secured by the same collateral (with the same priority) as originally secured the Ronald Corolla Claim. Upon payment in full to the Class 6 Secured Claim, Corolla shall release its lien on Debtor's property.

Class 6 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**Class 7: Chase Mortgage**

In respect of the loan of Chase Mortgage secured by a lien on Debtor's former home, 325 Circle Dr., Reno, Chase Mortgage shall be allowed to foreclose on the property without further order of this Court (an order terminating the automatic stay was issued 7/20/2010).  Any deficiency against Debtor shall be treated as a Class 8 General Unsecured Claim.

Class 7 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**Class 8:   General Unsecured Creditors (Allowed General Unsecured Claims Not Otherwise Classified)**.

Allowed non-priority general unsecured claims against Debtor not otherwise classified under the Plan ("Class 8 Claims"), will in no event be paid less than an amount equal to the value of  Debtor's projected disposable income necessary to fund this plan, for a five year period beginning on the date of first payment hereunder (being all of Debtor's disposable income (see 11 USC 1325(b)(2)) in excess of Debtor's $3,000 per month salary until this Class is fully paid all sums due them under this Plan), and such additional sum, if necessary, as will insure that General Unsecured Creditors receive not less than than ten percent (10%) and up to forty percent (40%) of their respective Allowed Claims (provided however that Debtor does not default on payment to General Unsecured Creditors in which case 100% of Allowed General Unsecured Claims shall become immediately due and payable).

If General Unsecured Creditors are paid at least 10% of the amount of their respective Allowed Claims within one year of the Effective Date, no additional payments will be due and owing to General Unsecured Creditors on account of their respective Allowed Claims, to wit: a 10% payment within the first 12 months after the Effective Date will constitute full and final satisfaction of Allowed General Unsecured Claims, provided that the Bankruptcy Court determines, on Debtor's motion for discharge, that said sum is equal to or greater than the value

of Debtor's projected disposable income during the 5 years following the Effective Date.

If General Unsecured Creditors are paid at least 20% of the amount of their respective Allowed Claims within two years of the Effective Date, no additional payments will be due and owing to General Unsecured Creditors on account of their respective Allowed Claims, to wit: a 20% payment within the first 24 months after the Effective Date will constitute full and final satisfaction of Allowed General Unsecured Claims, provided that the Bankruptcy Court determines, on Debtor's motion for discharge, that said sum is equal to or greater than Debtor's projected disposable income during the 5 years following the Effective Date.

If General Unsecured Creditors are paid at least 30% of the amount of their respective Allowed Claims within three years of the Effective Date, no additional payments will be due and owing to General Unsecured Creditors on account of their respective Allowed Claims, to wit: a 30% payment within the first 36 months after the Effective Date will constitute full and final satisfaction of Allowed General Unsecured Claims, provided that the Bankruptcy Court determines, on Debtor's motion for discharge, that said sum is equal to or greater than Debtor's projected disposable income during the 5 years following the Effective Date.

If General Unsecured Creditors are not paid at least 30% of the amount of their respective Allowed Claims within three years of the Effective Date, Debtor shall on the first day of the 37th month after the Effective Date begin paying $2000 per month, to be distributed pro-rata among all Allowed General Unsecured Claims until each respective General Unsecured Creditor has received 40% of its respective Allowed Claim, provided that the Bankruptcy Court determines, on Debtor's motion for discharge, that said sum is equal to or greater than Debtor's projected disposable income during the 5 years following the Effective Date, and provided further that if Debtor is more than 15 days late with any such $2000 monthly payment, Debtor shall liquidate RLL, LLC, R & L Nevada Holdings, A & B Logistics, Butte City California Property, Fallon properties and Baylocq Properties, LLC and divide all proceeds pro-rata between the Allowed General Unsecured Claims, which proceeds will constitute full and final satisfaction of Allowed General Unsecured Claims.  Any such sale shall be subject to overbid and shall be approved by the Bankruptcy Court.  Liquidation shall be accomplished by listing the properties or interests to be liquidated with Dick Johnson, Broker (Mr. Johnson is the broker with The Johnson Group, Brokers, 10631 Professional Circle, Reno, NV). Any General Unsecured Creditor holding an Allowed Claim who believes that the property is not being properly liquidated by Mr. Johnson may petition the Bankruptcy Court, following 10 day notice to Debtor, which Court shall grant such relief as it then deems appropriate under the circumstances.

General Unsecured Claims shall not bear interest.

Class 8 is impaired under the Plan and entitled to vote to accept or reject the Plan.

**Class 9:  Debtor.**

The Class 9 holder shall retain its equity interests (and the attendant rights) in all the Debtor's assets.

### D. Right to Early Payment.

Provided all payments are made in strict compliance with the priority provisions of the Plan and the Bankruptcy Code, the Revested Debtor may pay creditors more quickly than that which is proposed in the Plan without penalty.  Early payments may not be inconsistent with any other provision of the Plan.

## V.  A SUMMARY OF THE TREATMENT OF THE EXECUTORY

## CONTRACTS UNDER THE PLAN

All executory contracts and unexpired leases which have not already been assumed pursuant to order of the Bankruptcy Court are rejected as of the Confirmation Date. The Plan confirmation order will constitute an order of the Court approving such rejections as of the confirmation date. **To the extent that any non-Debtor party to an executory contract asserts a claim for cure, such cure claim shall be filed with the Bankruptcy Court at least five (5) business days prior to the Plan confirmation hearing, or such cure claim shall forever be barred.** All timely-filed cure claims shall be deemed disputed for all purposes relating to the Plan. The Debtor until the Effective Date, and the Revested Debtor thereafter shall negotiate in good faith with such cure claimant for a period of thirty (30) days and in the event that a consensual treatment of such alleged cure claim cannot be reached, the Revested Debtor shall file an objection to any such cure claim.

Damages Upon Rejection. **The Court will determine the dollar amount, if any, of the claim of any entity seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such entity must file a proof of claim for such damages with the Court on or before thirty (30) calendar days following the confirmation date.** To the extent any such claim is allowed by the Court by final order, such claim will become, and will be treated for all purposes under the Plan as, a general unsecured claim, and the holder thereof will receive distributions as a holder of an allowed claim in such class pursuant to the Plan. The Plan will constitute notice to entities which may assert a claim for damages from the rejection of an executory contract or expired lease of this bar date for filing a proof of claim in connection therewith; provided, however, that the Debtor has an obligation to notify such entities that confirmation has occurred.

Rights Upon Rejection. To the extent any rejected executory contract or unexpired lease by its terms provides any entity other than the Debtor with any options upon "termination", such options shall not be enforceable by such other entity as a result of the rejection of such executory contract or unexpired lease. Rejection of any executory contract or unexpired lease shall not affect the rights of the Debtor that arise upon termination pursuant to the terms of such executory contract or unexpired lease.

## VI. IMPLEMENTATION OF THE PLAN

### A. Plan Funding.

The payments required under Article IV of the Plan shall be made from operational revenues, including Debtor's disposable income, all of which shall be devoted to making payments required by this Plan. In addition to property described in § 541 of the Code, all property not exempt which Debtor acquires after commencement of the case but before it is closed and all or such portion of earnings from personal services of the Debtor or other future income as is necessary for the execution of this Plan will be devoted to payments required by this Plan.

### B. Plan Distributions.

The Revested Debtor will serve as the disbursing agent and shall be charged with making distributions under the Plan in strict accordance with the Plan. The Revested Debtor may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

13

### C. Unclaimed Property.

Any cash, assets, and other property to be distributed under the Plan that remain unclaimed (including by an entity's/person's failure to negotiate a check issued to such entity) or otherwise not deliverable to the entity/person entitled thereto before the later of (a) one year after distribution or (b) 90 calendar days after an order allowing such entity's/person's Claim becomes a Final Order, will result in cancellation of such entity's/person's Claim to the extent of the unclaimed amount. In such event, such entity's/person's Claim will no longer be deemed to be allowed, and such entity/person will be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code, will have no further Claim in respect of such distribution, and will not participate in any further distributions under the Plan with respect to such Claim.

### D. No Liability for Tax Claims.

Unless a taxing authority has filed a Claim against the Debtor within the bar date established therefor, no Claim of such authority will be allowed against the Debtor on account of Claims against the Debtor, or for taxes, liabilities, interest, additions to tax or other charges arising out of the failure, if any, of the Debtor, an affiliate, or any other entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

## VII. RESOLUTION OF DISPUTED CLAIMS

### A. Disputed Claims.

#### 1. Objection Deadline.

As soon as practicable, but in no event later than 60 days after the Effective Date, unless otherwise ordered by the Court, objections to Claims will be filed with the Court; provided, however, that the Revested Debtor may seek to extend such period (or any extended period) for cause.

#### 2. Prosecution of Objections.

After the Effective Date, the Revested Debtor will have authority to file objections to Claims and litigate to judgment, settle or withdraw such objections to disputed Claims. Without limiting the foregoing, Claims objections are contemplated with respect to the following creditors: IRS, Harvest Time Foundation judgment (to extent it impairs exemptions) and any claims filed as secured claims where the amount of the claim exceeds the fair market value of the security.

   i. **Bar Date for Amendments to Claims**. Amendments to Claims after the Confirmation Date are barred upon entry of the Confirmation Order.

   ii. **Distribution Record Date**. As of the close of business on the Confirmation Date, the various registers for each of the classes of Claims or Equity Security Interests as maintained by the Bankruptcy Court shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Security Interests unless otherwise specifically provided under the Plan. The Revested Debtor shall have

no obligation to recognize any transfer of the Claims or Equity Security Interests occurring on or after the Confirmation Date.

### B.  Defenses and Counterclaims.

Except as otherwise provided in this Plan, all defenses, counterclaims and setoffs, whether equitable or legal, of the Debtor and Debtor in Possession to Claims held or asserted to be held against the Debtor will vest on the Effective Date in the Revested Debtor.

### C.  Estimated Claims.

Notwithstanding any provision of the Plan specifying the time for payment of distributions to holders of Claims, no distribution will be made to the holder of any Disputed Claim until the time such Disputed Claim has been determined to be an Allowed Claim.  At the time of each distribution to holders of Claims in a Class or unclassified category which contains any Disputed Claim, the Revested Debtor will reserve in a separate fund the amount which would have been distributed to holders had their Disputed Claims been Allowed Claims so that the timing of distributions to other Claim holders will not be affected by any delay in the resolution of disputed Claims. Upon the allowance of any disputed Claim, the holder will be paid from the separate fund the amount which such holder would have received had its Claim been an Allowed Claim on the Effective Date.  For estimation purposes only, the Revested Debtor will identify in writing those Claims it deems objectionable by the Effective Date and file a list of the same prior to the Confirmation hearing.

## VIII DEFAULT; REMEDIES

### A. Event of Payment Default

Except as otherwise provided for herein and without limiting the rights of any creditor or party-in-interest, an "Event of a Payment Default" means any failure on the part of the Revested Debtor to pay fully when due any payment required to be made in accordance with the provisions of the Plan that remains uncured for a period of ten (10) days after written notice of such failure of performance or violation is received by the Revested Debtor or its counsel John White.

### B. Event of Non-Monetary Default.

Except as otherwise provided herein and without limiting the rights of any creditor or party-in-interest, an "Event of Non-Monetary Default" means any failure on the part of the Revested Debtor to comply with any provision of this Plan that remains uncured for a period of ten (10) days after written notice of such failure of performance or violation is received by the Revested Debtor or its counsel John White.

### C.  Remedies Upon an Event of Payment Default or Non-Monetary Default

Without limiting the rights under law or equity of any creditor, in the Event of a Payment Default or Non-Monetary Default, (i) all payments due General Unsecured Creditors under the Plan shall be immediately accelerated and (ii) the Revested Debtor must immediately list its assets for sale with a broker.  On request of the holder of an Allowed Claim, the broker shall not begin his duties until approved by the Bankruptcy Court. A sale mandated as a result of an Event of a Payment Default or an Event of Non-Monetary Default shall be subject to Bankruptcy Court

approval following notice and a hearing.  Any sale will be subject to higher and better offers with a reasonable opportunity to bid.  The Bankruptcy Court shall retain jurisdiction of the Plan and its implementation until all payments due to General Unsecured Creditors are paid in full.

### D.  Alternative Remedy of Secured Creditors.

Notwithstanding the default provisions described above, in the event a monthly payment due a secured creditor with an Allowed Secured Claim is more than 10 days late (i.e. if the payment is not made by the 15th of any given month), the secured creditor, without further order from the Court, may exercise its state law right to foreclose or, in its sole discretion, the secured creditor may have and exercise the same remedies as the holder of an Allowed Claim under the above-described default provisions.

## IX INJUNCTION

**From and after the Effective Date, and except as otherwise provided for in this Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claim: (i) commencing or continuing in any manner any action or other proceeding against Debtor; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or his property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or his property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or his respective property; and (vii) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code.**

## X.  REQUEST FOR APPLICATION OF 11 U.S.C. § 1129(b)

To the extent applicable, the Debtor, as Plan proponent, requests that this Court find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

## XI. MODIFICATION OF PLAN

The plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Revested Debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time period for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

After Confirmation, the Revested Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan, or the Confirmation Order or any other order entered for the purpose of implementing the Plan, in such manner as may be necessary to carry out the

purposes and intent of the Plan so long as the interests of the holders of Allowed Claims and future demands are not adversely affected.

# XII.  MISCELLANEOUS

### A.  Contemplated Compensation for Services

Provided all Plan payments are current, Debtor may receive reasonable compensation, which shall not exceed $3000 per month unless and until all Plan payments have been made.

### B.  Sales

The Revested Debtor may sell assets in the ordinary course of its business without Court approval provided: (1) the sale is for reasonable value; (2) the sale is an arm's length transaction; (3) proceeds from any such sale are distributed in accordance with applicable law, the Plan and the Confirmation Order; and (4) if the assets being sold are leased, the Debtor has obtained consent from the lessor concerning such sale.  Notwithstanding the foregoing, until such time that all Allowed Claims in Classes 8 are paid in full, in accordance with the Plan, the Revested Debtor may not sell assets outside the ordinary course without Court approval obtained after notice and a hearing.

### C.  Tax Consequences

Pursuant to the Plan, the Debtor, or as the case may be the Revested Debtor intends to pay all taxes associated with its post-confirmation earnings from operational revenue.  Debtor believes that there are no federal income tax consequences peculiar to it under its Plan. Creditors are advised to discuss with their own tax advisor(s) any tax consequences associated with receiving payments under the Plan.

### D.  Exculpation

Through the Effective Date, neither the Debtor nor his respective officers, directors, attorneys, agents and employees employed since the Petition Date, shall incur any liability to the Debtor or any other creditor and Equity Security Interest holder, and other parties in interest in the chapter 11 case for any act or omission in connection with or arising out of the chapter 11 case, including, without limitation, prosecuting confirmation of this Plan, confirmation of this Plan, and the administration of the estate, this Plan or the property to be distributed under this Plan, except for gross negligence or willful misconduct, and in any respects, such person will be entitled to rely on the advice of counsel with respect to their duties and responsibilities with respect to the chapter 11 case and this Plan.  Nothing herein shall be deemed to be a waiver of any creditor's rights under Fed. R. Civ. P. 60.

### E.  Vesting.

Upon completion of Plan payments, or at the end of the fifth year following the Effective Date, or at such sooner time as may be determined  by the Court on notice to creditors and other parties in interest, all property of the Debtor's estate shall be vested in Roger Pierre Baylocq, who shall retain such property as the Revested Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

### F.  Discharge.

17

Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### G.  Retention and Enforcement of Causes of Action.

All causes of action shall vest with the Revested Debtor.  The Revested Debtor does not anticipate any post-confirmation litigation, except for collection matters that occur in the normal course of Debtor's business, and the determination of certain claims, including the Debtor's claim against U. S. Bank for wrongful foreclosure, and against SunTrust Mortgage for unreasonably refusing to release insurance proceeds need to complete necessary repairs to Debtor's residence.  The Revested Debtor reserves the right to pursue all other claims and causes of action, whether so stated herein or otherwise.

### H.  Unknown Creditors.

Any pre-petition unsecured creditor who is not specifically listed in the Plan, Disclosure Statement or schedules, as amended, and has not previously received actual notice nor has actual knowledge of the filing of the Debtor's bankruptcy petitions, may be entitled to participate in these bankruptcy cases by filing a proof of claim prior to the Claims bar date or such other date established by the Court.

### I.  Entire Agreement.

The Plan and related documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No entity will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

### J.  Headings.

Headings are utilized in the Plan for convenience and reference only and will not constitute a part of the Plan for any other purpose.

### K.  Consent to Jurisdiction.

The Revested Debtor or any successor thereto, consents to the jurisdiction of the Court and agree that it will be the preferred forum for all proceedings relating to such default.

### L. Successors and Assigns.

The rights, duties and obligations of any entity named or referred to in the Plan will be binding upon, and will inure to the benefit of, the successors and assigns of such entity.

### M. Unmarked Ballots.

Executed ballots, if any, respecting the Plan returned by creditors or parties in interest that do not indicate acceptance or rejection of the Plan will be deemed and counted as acceptances of the Plan.

### N.  Governing Document Where Conflict Exists.

The terms of the Confirmation Order shall control in the event of any inconsistencies between the Confirmation Order and the Plan. Likewise the Plan will control in the event of any inconsistencies between it and the Disclosure Statement.

### O.  Retention of Jurisdiction

This court shall retain jurisdiction (notwithstanding anything contained elsewhere herein) after confirmation of the Plan:

   a.  to consider (and reconsider if appropriate) Claims and objections thereto;

   b.  to hear and determine any adversary proceeding pending on the Effective Date;

   c.  to fix expenses of administration and compensation therefore, including, without limitation, the hearing and determination of all applications for compensation of Professionals and reimbursement of expenses under sections 330, 331 or 503(b) of the Bankruptcy Code;

   d.  to enforce or interpret the Plan or any Order previously entered herein;

   e.  to hear and determine any dispute arising under or relating to the Plan or arising under or relating to this Chapter 11 reorganization case;

   f.  to enforce all discharge provisions of the Plan;

   g.  to make such orders and directions pursuant to 11 U.S.C. §§ 502, 503, 505, 506, 1127, 1141, 1142 and 1146 as may be necessary or appropriate;

   h.  to modify this Plan in accordance with § 1127 of the Bankruptcy Code;

   i.  to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the non-material adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

   j.  to ensure performance by the Debtor, the Revested Debtor and EasyMark, LLC of their respective obligations under the Plan;

   k.  to determine such other matters and for such other purposes as may be provided in the Plan and/or the Confirmation Order, including, without limitation, any sale contemplated in the Plan; and

   l.  to enter a final decree to close the case.

DATED this _____ day of March, 2011.


_____
Roger Pierre Baylocq,
Debtor and Debtor in Possession.


EasyMark LLC has read Roger Pierre Baylocq's March 4, 2010 Plan of Reorganization, agrees to any performance required of it thereunder, and consents to the jurisdiction of this honorable Court.

**EASYMARK, LLC**

_____

By:  Roger Pierre Baylocq
Its:  Managing Member

Submitted by:
**WHITE LAW CHARTERED**

_____
John White, Esq.
Attorney for Debtor