John White, Esq., S.B.#1741             E-filed on August 1st, 2011
White Law Chartered
Twentieth Century Building
335 West First St.
Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com
Attorney for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

ROGER PIERRE BAYLOCQ,

        Debtor-in-Possession.

_____/

CASE NO:  BK-N-10-51372-gwz

Chapter 11

**ROGER PIERRE BAYLOCQ'S MAY 31, 2011 DISCLOSURE STATEMENT**[1]

| | |
|---|---|
| **Hearing Date:** | May 31, 2011 |
| **Hearing Time:** | 3:00 pm |
| **Time Required:** | 1 hour |

---

[1]This Disclosure Statement (and all attachments thereto) is identical to Debtor's March 4, 2011 Disclosure Statement, excepting that

    1) Hosking: Paragraphs 6.1 of the Disclosure Statement, along with Exhibit C, as well as Subparagraph B(6) of Article III and Par. C (Class 6) of Article IV of Exhibit A (Plan), now include the Modifications contained in Debtor's May 25, 2011 Supplement to Disclosure Statement.  These changes reflect that this loan is owned by Phillip Hosking, Trustee of the Hosking Family Trust rather than Ronald Corolla; and

    2) SunTrust: Paragraphs have been added at the end of the fourth full paragraph of Paragraph 3.2 and at the end of Paragraph 3,3 of the Disclosure Statement, and Exhibit C has been modified, as well as Class 4 of Article III(B)(Classes) and Class 4 of Article IV(C) (Treatment of Classes) of Exhibit A (Plan). These changes reflect a provisional accord between Debtor and SunTrust concerning the Delmonte Lane property.

    3. Pabst:  Paragraph 7.3 (Class 1) is changed to show that the note is due on the first of the month, late on the 11th (with same late charges as original note) and due in full 10 years from first plan payment. All members of Easymark, LLC must also sign new note. Exhibit C is conformed. Identical changes are made to Class 1 of Article IV(C) of the Plan.

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

1

1

2

TABLE OF CONTENTS

| 1 | DESCRIPTION OF DEBTOR | | 5 |
|---|---|---|---|
| | 1.1 | Debtor's Background | 5 |
| | 1.2 | Ownership | 5 |
| | 1.3 | Debtor's Pre-bankruptcy Operating and Financial History | 6 |
| 2. | DISCUSSION OF THE REASONS FOR BANKRUPTCY FILING | | 6 |
| | 2.1 | Reasons for Filing | 6 |
| | 2.2 | Corrections to Operations Since Commencement of Case | 6 |
| | 2.3 | Prospective Improvements In Operations | 7 |
| 3. | SUMMARY OF PROCEEDINGS TO DATE | | 7 |
| | 3.1 | Historical and Current Financial Information | 7 |
| | 3.2 | Material Post-Petition Events | 7 |
| | 3.3 | Legal Proceedings | 8 |
| 4. | A SUMMARY OF ASSETS | | 9 |
| | 4.1 | Scheduled Assets and Their Values (Pre-Petition) | 9 |
| | 4.2 | Present Estimate of Assets & the Basis of Such Estimate Values | 12 |
| | 4.3 | Explanation of Any Deviation from Scheduled Value | 12 |
| 5. | A DESCRIPTION OF THE UNCLASSIFIED CLAIMS | | 12 |
| | 5.1 | Administrative Claims | 12 |
| | 5.2 | Priority Claims | 13 |
| 6. | A DESCRIPTION OF CLAIMS BY CLASS INCLUDING AN ESTIMATE OF THE AMOUNTS OF CLAIMS IN EACH CLASS AS REFLECTED IN THE SCHEDULES; AND PROOFS OF CLAIM ON FILE, OR AS OTHERWISE AGREED | | 13 |

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

| 6.1 | Secured Claims | 13 |
|---|---|---|
| 6.2 | Unsecured Claims. | 14 |
| 6.3 | Statement of Impairment | 14 |
| 6.4 | Claims Bar Date: | 14 |
| 6.5 | Disputed Claims and Actions Taken or to be Taken to Liquidate Them | 14 |
| 6.6 | Description and Approximate Size of the General Unsecured Creditor Class | 14 |
| 6.7 | Estimated Aggregate Dollar Amount of General Unsecured Claims | 15 |
| 7. | A SUMMARY OF THE TREATMENT OF ALLOWED UNCLASSIFIED AND CLASSIFIED CLAIMS UNDER THE PROPOSED PLAN | 15 |
| 7.1 | Definitions | 15 |
| 7.2 | Generally | 15 |
| 7.3 | Classified Claims | 16 |
| 7.4 | Insider Claims Identified | 19 |
| 7.5. | Right to Early Payment | 19 |
| 8. | A SUMMARY OF THE TREATMENT OF THE EXECUTORY CONTRACTS UNDER THE PROPOSED PLAN | 19 |
| 9. | A LIQUIDATION ANALYSIS | 19 |
| 9.1 | Value of Assets if Sold at Auction Upon Commercially Reasonable Notice (Chapter 7 Evaluation) | 19 |
| 9.2 | Comparison to Value of Debtor's business as a Going Concern | 21 |
| 10. | HOW DEBTOR INTENDS TO MAKE PROPOSED PAYMENTS | 21 |
| 10.1 | Plan Funding | 21 |

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

| | | |
|---|---|---|
| 10.2 | Cash Requirements at Effective Date of Plan | 22 |
| 10.3 | Projections Through End of Plan Payment Period | 22 |
| 10.4 | Debtor's assumptions are realistic | 22 |
| 10.5 | Risk Factors | 22 |
| 11. | DISCLOSURE OF POST-PETITION CONTROL | 23 |
| 12. | PLAN VOTING RIGHTS | 23 |
| 13. | CONFIRMATION OVER OBJECTION OF DISSENTING CLASS | 23 |
| 14. | OTHER IMPORTANT TERMS & CONDITIONS OF THE PLAN | 24 |
| 14.1 | Ongoing Reporting Requirements of the Revested Debtor | 24 |
| 14.2 | Limitations on Revested Debtor Payments or Distributions to Roger Baylocq | 24 |
| 14.3 | Default Remedies | 24 |
| 14.4 | Pre-Petition causes of action | 24 |
| 15. | DISCLAIMER | 25 |
| | INDEX OF EXHIBITS | 26 |

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

**INTRODUCTION.**

**PURPOSE.** This disclosure statement (the "Disclosure Statement") is submitted pursuant to 11 U.S.C. § 1125, LR (Nevada) 3016(d), paragraph 7 of the US Trustee guidelines for Region 17, and the U.S. Trustee Guidelines in the chapter 11 case of Roger Pierre Baylocq. Its purpose is to provide adequate information to enable a hypothetical reasonable investor typical of the holders of claims or interests in the case to make an informed judgment about the proposed plan. This Disclosure Statement has not been approved by the Bankruptcy Court ("Court"). The Court will hold a hearing on this Disclosure Statement and notice of that hearing will be served on all interested parties at least 28 days before the date of the hearing. Unless and until this Disclosure Statement, as it may be amended, has been approved by the Court, the Debtor above-named and other interested parties may not solicit your support of the Plan, a copy of which is attached hereto as Exhibit A.

**IMPORTANT NOTICE. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

The proposed distributions under the Plan are discussed at pages 14-18 of this Disclosure Statement. [General Unsecured Creditors are classified in Class 8 and will receive a distribution of between 10% and 40% of their allowed claims.] The Court has not yet confirmed the Plan. Your rights to vote on and object to the Plan are discussed below and in the Bankruptcy Code. **Deadlines for voting and objecting to the Plan as well as the date of the confirmation hearing will be set forth in the Order approving this Disclosure Statement, if and when such an Order is entered.**

1. DESCRIPTION OF DEBTOR

This Disclosure Statement is made with reference to the Plan (See Exhibit A hereto).

1.1 Debtor's Background

The Debtor in Possession, Roger Baylocq, is an individual person, as compared to an artificial entity. References herein to "Roger" or to "Debtor" are references to Roger Pierre Baylocq, Debtor in Possession. Roger has been a real estate investor and rental property manager since 1985. He began in San Francisco, CA in 1985 investing in construction projects and rental real estate. He moved to Reno, NV in 1991 where he owned and operated Cheers Hotel and Casino. He has lived continuously in Reno, since 1991, investing in rental properties, motels, bars and nightclubs. Roger divorced in 2000, lost 50% of his assets to his wife.

Debtor has no minor children and no unpaid child support.

1.1.1 Petition Date: April 15, 2010.

1.2 Ownership

All assets are owned by Roger Pierre Baylocq, Debtor in Possession. However some of those assets are interests in businesses which are owned by both Debtor and one or more other individuals. Some of those businesses are involved as debtors in other bankruptcy cases.

Roger began with a small savings of $14,000.00 in 1985 and continually leveraged real estate investments to a net worth of $3,000,000.00 in 2000 when he lost half to his wife. In order to rebuild his money, he took on partnerships with Louis Alessandria, and Mark Bjorlin. Roger and Louis formed RLL, LLC; R&L Nevada Holdings, LLC; A&B Logistic, Inc. and Alpine Investments, LLC. Roger and Mark formed Easymark, LLC and purchased the Gateway Inn in

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503
f (775) 322-8000
f (775) 322-1228

5

Reno, NV.

### 1.3 Debtor's Pre-bankruptcy Operating and Financial History

It is through these partnerships that Roger was able to continually leverage and purchase more and more properties from 2000 through 2007 in the partnership names and his own personal holdings. This disclosure statement deals with property that Debtor owns individually and with all of Debtor's ownership interest in those other businesses.

## 2. DISCUSSION OF THE REASONS FOR BANKRUPTCY FILING

In 2008, real estate values in Washoe and Churchill Counties in Nevada began decreasing moderately until November 2008, when they took a severe and fatal plunge. In early 2009, Roger Baylocq found many of his latest purchases in Fallon and Verdi were under water which means he owed more on the mortgages than the properties were worth. Roger had invested over $500,000.00 in plans and engineering for construction projects in Fallon, Verdi, Panther Valley and Sun Valley. All these projects lost approximately 50% of their value from 2008 to April 15, 2010. All this investment money was lost as the project became unbuildable due to the debt and lower values. This forced RLL, LLC and R&L Nevada Holdings, LLC, development partnerships, into Chapter 11 Bankruptcy in 2009 and Roger Baylocq to lose more than 10 properties personally held to foreclosure in 2009.

### 2.1 Reasons for Filing

During this cash crisis beginning in 2008, Roger was unable to pay his income taxes. This led to IRS liening him for taxes on the assumption he was still making huge money as in 2006 tax return. The IRS seized all of Roger Baylocq's personal funds of approximately $30,000.00 in January 2009, effectively leaving Roger with no liquid cash. This left Roger unable to operate or continue to manage any of his construction properties, or rentals in Fallon and unable to pay his personal bills. Fallon rentals were abandoned in June, 2009. Construction on a home in Verdi ceased and was foreclosed on in the same year.

RLL, LLC and R&L Nevada Holdings, LLC came to a halt and were unable to be sold. Roger Baylocq continues to operate and manage the Gateway Inn, but suffered another setback when his business partner, Mark Bjorlin died on January 9, 2009. The Gateway Inn revenues have declined and management has been difficult due to the change of ownership of the other 50%.

These events in 2009 left Roger with only the properties he had equity in, or the properties the note holder had no interest in foreclosing on. Roger was forced into a no cash and no liquidity position and finally had to declare bankruptcy on April 15, 2010 to stop enforcement of a judgment from Fallon Properties that would have sold his best property, The Gateway Inn in Reno, NV.

On April 9, 2010, Debtor was sued by the State of Nevada (State v Baylocq, Case No. 35789, Dept. 1, Third Judicial District Court (Churchill County), herein the "Fallon Water Litigation", in which litigation the State sought an injunction preventing Debtor from using the well which had historically served all of his Fallon Properties, on the grounds of excessive arsenic content.

### 2.2 Corrections to Operations Since Commencement of Case

In Bankruptcy, Roger has made adequate protection payments of interest only payments on its best assets. He has made $6,900.00 payments monthly to Pabst on the Gateway Inn, beginning July 1, 2010, $166.00 payments monthly to Pura on 1490 7th St. Duplex, beginning on July 1, 2010, and two $2,066.67 payments to SunTrust Mortgage on 2370 Delmonte Lane,

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

6

beginning December 1, 2010 (The two SunTrust checks were returned to Debtor on February 14, 2010). He has been able to stabilize income and lower expenses on these properties. The Delmonte residence awaits repairs from an insurance claim yet to be fully filed, as SunTrust Mortgage had failed to endorse the October 29, 2010, $24,714.42 Traveler's Insurance check, issued in partial payment of damage to the home. Despite this problem, Roger has been able to re-rent one unit of the 5 rentals and is preparing the other 4 for re-rental although cooperation from SunTrust Mortgage would accelerate and help to re-establish this asset.

2.3 Prospective Improvements In Operations

Debtor has cut operating expenses to the bone and is now personally working the desk at the Gateway Inn several days a week. Depending on the outcome of a pending title issue, he expects to soon repair his Delmonte Lane rentals, which will produce much needed income.

3. SUMMARY OF PROCEEDINGS TO DATE

3.1 Historical and Current Financial Information

See Exhibit B, attached hereto, which is a summary of the gross revenues and expenses of each property for the years 2007, 2008, 2009 and 2010. These are direct numbers taken from the tax returns filed by Mr. Baylocq during the period of this bankruptcy. The 2011 and 2012 projections contained in said exhibit are based on what debtor expects between now and the Effective Date. In addition, Debtor has regularly filed monthly operating reports with the Bankruptcy Court. Any creditor who desires copies of those reports may obtain same from Debtor's counsel, John White.

3.2 Material Post-Petition Events

The case was filed on April 15, 2010. On April 29, 2010, Debtor filed his Schedules and Statement of Affairs. On May 18, 2010, the Bankruptcy Court entered its order employing Mr. White for the bankruptcy estate. On May 21, 2010, Debtor supplemented Schedules E and F by adding creditors. On May 24, 2010, the meeting of creditors pursuant to 11 USC §341 was held and concluded. On June 1, 2010, Debtor moved the Bankruptcy Court for permission to revoke his Trust, which motion was granted by order entered September 21, 2010.

At the time the Chapter 11 Petition in this Case was filed, only one of Debtor's properties was rented, being one-half of the 7th St. Reno Duplex, rent being $750 per month. On June 16, 2010, the holder of the first mortgage on Debtor's 7th St., Duplex, Fred and Florence Pura, noticed the 7th St. Duplex tenant to pay rent to the Puras rather than to Debtor. On or about August 15, 2010, the Puras, pursuant to Debtor's demand, voluntarily withdrew their said notice, whereupon the Tenant began paying rent, including unpaid post-petition rent, to the Debtor. Thereafter, following completion of needed repairs, on or about October 1, 2010, the Debtor was able to lease the other half of the Duplex for $750 per month.

On June 17, 2010, the Bankruptcy Court entered its order approving Debtor's employment of Randy Barton, CPA, as the Debtor's accountant.

On July 6, 2010, SunTrust Mortgage filed a Motion for Relief from Stay Property, seeking permission to foreclose on Debtor's home, 2370 Delmonte Lane, RENO, NV, being the same home US Bank had allegedly foreclosed on in 2009. SunTrust withdrew its said Motion on August 18, 2010. On October 29, 2010, Traveler's Insurance issued a $24,714.42 insurance check in partial payment of the repairs needed on Debtor's Delmonte Lane home, which check is payable to Roger Baylocq and SunTrust Mortgage, Inc.. On December 23, 2010, Debtor amended his Schedule A to reflect ownership of the Delmonte home. To date, SunTrust has refused Debtor's request to endorse this insurance check so that needed repairs can be made.

WHITE LAW
CHARTERED
LAWYERS
20TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

7

Despite this problem, Debtor, on January 1, 2011, was able to rent one unit of the 5 rentals and is preparing the other 4 for re-rental although cooperation from SunTrust Mortgage would accelerate and help to re-establish this asset.

Included below is additional language providing for Plan Debtor treatment of the Sun Trust Claim (Class 4), being Debtor's detailed •2370 Delmonte Renovation Plan.' A copy of the 2370 Delmonte Renovation Plan, including the attached exhibits, is attached hereto as Exhibit D and incorporated herein at this place.

On July 20, 2010, the Bankruptcy Court approved a Stipulation lifting the stay on 325 Circle Drive, Reno, NV, being property that Debtor had lost to his ex-wife some 10 years before this Chapter 11 Case was filed.

On July 22, 2010, creditors Harvest Time Foundation, Aspen Valley Christian Foundation  and Bert and Emma Van Komen, holders of an approximate $740,000 claim based in part on a November, 2009  Washoe County District Court default judgment against Debtor, filed a motion to extend time to determine dischargeability of debt and to file proofs of claim. The Court gave these creditors until October 21, 2010 to file claims and to object to dischargeability.  Harvest Time timely filed its $740,000 claim on or about October 20, 2010. However none of these creditors filed a complaint objecting to dischargeability.

In mid-October, 2010, Debtor filed his 2007, 2008 and 2009 personal tax returns, as well as Amended returns for 2005 and 2006.  These tax returns show that he has no tax liability for 2007, 2008, and 2009.  He has reduced his tax liability for the year 2006 to $20,000 and is due a refund of $11,000 for 2005.

On January 4, 2011, Debtor lost the Fallon Water Litigation and the Third Judicial District Court enjoined Debtor's further use of the well involved in the Fallon Water Litigation (below).

3.3 Legal Proceedings

1. *State of Nevada v Baylocq*, Case No. 35789 is presently pending in the 3rd Judicial District Court of Nevada.  The net effect of this litigation at this time is to prevent Debtor from using or renting his remaining Fallon properties until he locates an alternate source of water.

2. There is was a dispute concerning ownership of Debtor's Delmonte Lane home.  On February 14, 2011, Debtor requested copies of the mortgage note(s) and any assignment(s) from counsel for SunTrust and US Bank. On February 22, 2011, US Bank filed a Motion for Relief from Stay (Docket 97) to permit it to evict Debtor from his Delmonte home, based on an allegedly valid July 14, 2009 foreclosure on the same property by US Bank.  At the time US Bank filed its Motion for Relief from Stay in this Court, SunTrust Mortgage claimed ownership of the note securing the debt on Debtor's said home and the supporting Deed of Trust.  See SunTrust's $1,004,950.62 secured claim, being Claim 16, filed herein June 11, 2010.  On February 23, 2011, SunTrust filed a document entitled Withdrawal of Proof of Claim.  Debtor intends obtain copies of any assignments of the Delmonte note or mortgage, any pooling and servicing agreement, any mortgage loan purchase agreement, and any other related agreements, and may contest US Bank's Motion or take such other legal action as appears appropriate under the circumstances.

3. Debtor has suffered damage by reason of US bank's wrongful foreclosure of his Delmonte home and intends to recover said damages in an action for wrongful foreclosure.

4. Debtor and Suntrust have provisionally resolved the dispute as to title of the Delmonte property. Suntrust will re-file a proof of claim herein, and has consented to treatment in the proposed Plan of Reorganzation, the terms of which are forthcoming in a contemporaneous

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

f (775) 322-8000
f (775) 322-1228

8

stipulation between the parties. Accordingly, no further litigation as between the Debtor and Suntrust is contemplated, except that which relates to the Plan confirmation          and/or interpretation of the settlement as between same.

4.  A SUMMARY OF ASSETS
    4.1 Scheduled Assets and Their Values (Pre-Petition), including exemption discussion
        4.1.1 Personal Property
            4.1.1(a). Of the Debtor.

On April 29, 2010, Debtor filed Schedule "B" which itemized all of his personal property and valued it at $695,500. It has not been amended.  Schedule C, filed at the same time, claimed an interest of $8,000 in the personal property as exempt (furniture, books, clothes, a gun and a truck).  On December 23, 2010 Debtor filed an amended Schedule C, claiming his Delmonte home as exempt.  On being informed that the Office of the U.S. Trustee would object to the amendment on the grounds that Debtor was not living in his Delmonte home on the Petition Date, Debtor, on December 30, 2010, further amended Schedule C to delete the claim of homestead in his Delmonte home, without prejudice. Debtor intends to add it by later amendment, if circumstances warrant. However, the matter should not affect confirmation, as Debtor has no equity in the Delmonte home.

            4.1.1(b). Of the Estate

Debtor's projected post-petition earnings or so much thereof as are necessary to fund this Plan, are property of this Estate as well as all or such portion of earnings from personal services or other future income as is necessary for the execution of the Plan for a period of five (5) years beginning on the Effective Date.

All of Debtor's personal property listed in the Schedules and not claimed as exempt is property of Debtor's Estate, including but not limited to:

    4.1.1.1 **EasyMark, LLC** (50%).  The Gateway Inn (in Reno, near Keystone Ave. and Interstate 80) runs basically as a residential hotel with weekly and monthly tenants. The property has a restaurant, which closed in February, 2011. The property ran extremely well with 90-95 percentile occupancy consistently through 2007. As with all Reno rental properties, it has suffered and income has declined since 2008. The total revenue of the property has decreased by 50% from 2007 levels with gross income projected at only $400,000.00 for 2011 and expense of $300,000.00, with net operating income of only $100,000. 00. These numbers have caused the county assessor's office to lower the value of the property to $1,430,000.00, thereby reducing the property tax bill from $27,000.00 annually to approximately, $17,000.00. Debtor has decreased further costs by reducing payroll from $90,000.00 annually to approximately, $20,000.00 and therefore reducing payroll taxes, workers' compensation insurance and unemployment taxes. The health insurance plan was cancelled, saving $20,000.00 annually. The Gateway Inn seems to have stabilized its income at 50% occupancy for the last 6 months and have reduced expenses to be able to become viable. We feel that we are near bottom and hope that business will once again improve beginning in 2012.

        Assets: $1,400,000.00
        Liabilites: $1,117,000.00
        Gross Income: $400,000.00
        Expenses: $300,000.00
        NoI: $100,000.00
Other 50% owned by April Bjorlin, of Reno.

WHITE LAW CHARTERED LAWYERS
0TH CENTURY BLDG
I35 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

4.1.1.2. **RLL, LLC** (50%) was a real estate development company owned 50% by Roger Baylocq. It is presently in chapter 11 bankruptcy and has all its assets for sale. These assets will be sold and creditors of RLL will be paid. At this time, Roger Baylocq expects to recover between $50,000.00 and $100,000.00 cash after all assets are sold that will be available to creditors of this Estate. This money will be used to retire unsecured debts by the debtor.

    Assets: $1,100,000.00
    Liabilites: $800,000.00
    Gross Income: $0.00
    Expenses: $10,000.00

Other 50% owned by Louis Alessandria, of San Francisco.

4.1.1.3. **R & L Nevada Holding, LLC** (50%). R & L Nevada owns a commercial building at 300-320 Kietzke Lane, Reno. It is owned 50% by Roger Baylocq and recently exited from chapter 11 with an approved re-organization plan. The building will take a while to achieve maximum rents but will not provide any cash flow for the next couple of years. Debtor expects to either sell the building when the market improves or benefit from the increase in cash flow. By reason of his interest in R & L, Debtor anticipates recovering money in two years of approximately, $50,000.00, after all debts of R & L are paid, in which $50,000.00 will be used to pay the unsecured creditors' claims of this Estate.

    Assets: $1,000,000.00
    Liabilities: $850,000.00
    Gross Income: $7,000.00 month
    Expenses: $7,000.00 month

Other 50% owned by Louis Alessandria.

4.1.1.4. **A & B Logistics, Inc.** (50%). A & B Logistics is owned 50% by Roger Baylocq and operates Alpine Taxi which is a small taxi company based in Incline Village which operates only two vehicles in Nevada & California. The company is breaking even presently and is anticipating to increasing the fleet size in the future and add to revenues. There will be some profits in 2012, but nothing before this time as all revenues are being used to pay bills and expand the fleet of cars.

    Assets: $60,000.00
    Liabilities: $0.00
    Gross Income: $48,000.00
    Expenses: $40,000.00

Other 50% owned by Louis Alessandria.

4.1.1.5. **Alpine Investments, LLC** (50%) ceased all operations in 2009. There are some liabilities remaining which will become unsecured liabilities of Debtor as he was a guarantor on some accounts. Assets: $0, Liabilities: $5,000.00

4.1.1.6. **Baylocq Construction Inc.** (100%), ceased all operations in 2008. There are some contingent liabilities remaining which the Debtor guaranteed. Asset: $0, Liabilities: $20,000.00. The obligations will become unsecured claims of the Debtor and will be treated in the Plan with other unsecured creditors.

4.1.1.7. **Baylocq Properties LLC** (100%) owns two parcels on vacant land. One is located at 1055 E. Rit Carson Rd., Verdi, NV and the other is in Fallon APN # 007-791-07. The Verdi property has been re-appraised by the assessor this year to $67,000.00 and the Fallon property is a small lot worth approximately, $5,000. 00. These properties are to be held and developed for maximum investment return in the future. They have very little carrying costs and

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG
I35 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

have no debt.

> Assets: $72,000.00
> Liabilities: $0
> Gross Income: $0
> Expenses: $1,200.00 Annually- Tax Property

 4.1.1.8. **Jazz A LLC** (50%) is a company that never began operating due to Debtor's falling revenue since 2008. Its initial investment of $10,000.00 will be written off on 2010 taxes and $5,000.00 debt will be closed out to unsecured claims. Asset: $0, Liabilities: $5,000.00

 4.1.2 Real Property of the Debtor.

 4.1.2.1. **2370 Delmonte Lane** is a 4.8 acre parcel of land which is the Debtor's personal residence, plus 5 legal apartments on a parcel of land in suburban Southwest Reno. Debtor amended Schedule A on December 23, 2010, to add this property. It is located in an un-annexed island of Washoe County surrounded by the City limits. It was purchased by Roger Baylocq in 2001 for one million dollars. It is presently valued at $600,000.00. The 5 apartments have historically brought an approximately $3,500.00 income per month. At present time, due to water damage and illegal foreclosure, the property has only 1 tenant in it. Upon full occupancy by Debtor and re-renting, the property will easily support payments on $600,000.00 of secured debt at 4% amortized over 30 years, with payments of approximately $2,700.00 a month. This would allow Debtor to re-occupy his personal residence. The property is in a premium location and, provided title issues are successfully resolved, full occupancy should be obtained gradually in a couple of months.

 4.1.2.2. **1490-92 7th St.** in Reno, NV is a duplex of 2 - 2bedroom, 1 bath units of approximately 900 square feet and 1 car garage in each unit. The property was purchased from the Puras in 1997 for $140,000. During Bankruptcy the property has been repaired by the Debtor through his own hard work and sweat equity. The property is again at 100% occupancy and earning $1,500.00 a month. This property appreciated greatly to reach an appraisal price of $400,000.00 in 2005, only to depreciate and return to a value of $150,000.00 at the present time. The Debtor in 2005 took out a 2nd loan on the property with Bank of America in the presently outstanding amount of approximately $194,000.00, as well as the original loan carried back by the Puras with a present balance of approximately $32,000.00. Therefore, this is a secured debt of $150,000.00 and an unsecured debt of approximately $76,000.00. Debtor will decelerate the first loan to a new note upon effective date of $32,000.00 at 6%, fully amortized and due in 5 years with a payment of $700.00 a month, until fully paid. The Debtor plans to decelerate the second loan with a new note for a secured $118,000.00 at 3.75% interest rate, amortized and paid if full over 15 years with a payment of approximately $500.00 a month. This will allow $300.00 a month for normal operating bills and put Debtor back on track for faster equity build up while paying the creditors' secured loan in full. The balance of $76,000.00 unsecured debt will be transferred to the Unsecured class of Bankruptcy for treatment under the Plan.

 4.1.2.3. The **Ember Mobile Home Park**, (APN-007-791-08) consists of 14 closed down old and obsolete mobile homes at 873-882 McLean St. and 876-898 Cleveland St. in Fallon, NV. The park was purchased in 2006 for $500,000.00 with a 1st note carry back by Harvest Time Foundation of $425,000.00. The park sits on a 1.5 acre site that runs from McLean St. through Cleveland St., all the way to Wilds St. The mobile homes are no longer rentable nor efficient for income purposes and eventually must be removed and disposed of. The land does still have a value for development of approximately $200,000.00. The Debtor has invested over a hundred thousand dollars in subdivision and engineering plans for this

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG
I35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

parcel and 4 other contiguous parcels to follow in Plan. Debtor would like to hold these parcels until a future date when they can be developed as planned or sold off without a loss of the full investment and the creditors losing all their money as well. The secured amount of the claim is $200,000.00. Debtor wishes to decelarate the note to a note of $200,000.00 on the effective date of the Plan. It would execute a new note for interest-only payment at 4% monthly to creditor with full note due and payable 5 years from effective date of the Plan. The remaining $225,000.00 unsecured claim would be allocated to the Unsecured class for treatment under the Plan.

4.1.2.4. **Vacant lot** (APN-007-791-09) a contiguous parcel of approximately .15 acres in Fallon, NV. The lot was purchased in 2007 for $10,000.00 cash. It has no liens. Present value is $5,000.00. It should be held for future value with other parcels.

4.1.2.5. **845-865-871 McLean St. and 840-870 Cleveland St.** (APN-007-791-11) is a 2.2 acre parcel with frontage to Front St., (Fallon City Limit) and running from McLean St. to Wilds St. and contiguous to the other Fallon parcels. It has 5 stick built buildings on it, consisting of 3 small single family residences of approximately 600 sq.ft. one large single family residence of approximately 1,100 sq. ft. and a duplex of approximately 1,000 sq.ft., combined units. This parcel has a rental value of approximately $3,300.00 a month if rented, however, due to a recent district court ruling on January 4, 2011, the well that had been providing water to these units cannot be used due to a high arsenic content in the water. The property was purchased in 2007 for $210,000.00 cash. It has an inherent land value of $250,000.00, plus if the building can obtain a new water source, the building would have an added value of approximately, $200,000.00. The property was re-financed with hard money loan in 2008 in the refinanced amount of $200,000.00 which is a secured lien on the property. The property will require either annexation alone into the city of Fallon, or treatment to the water for arsenic. Debtor is currently negotiating with the City of Fallon, and Nevada Division of Water Resources to locate the more economic solution.

4.1.2.6. **Vacant land** of .82 acres on Wilds St. in Fallon, NV  (APN-07-791-14). This has a land value of $100,000.00 and contiguous to other parcel. Parcel is free and clear of liens and should be held for development together with other parcels.

4.1.2.7.         **8165 Highway 162, Butte City, CA**. Debtor owns 50% of this parcel. The other 50% is owned by Antoinette Simons. Rural commercial building was purchased at peak of market on October 2007. It was the last purchase by Debtor before the market crash. Purchase price was  $75,000.00. Investment yields $200.00 monthly to Debtor. Parcel is free and clear of liens but control is limited due to only 50% ownership. Debtor's fair market value equity is $37,500.00.

4.2 Present estimate of Assets and the Basis of Such Estimate Values

The scheduled value of Debtor's personal property is $695,500. 00. The scheduled value of Debtor's real property is $1,725,000 (including Delmonte Lane).

4.3  Explanation of Any Deviation from Scheduled Value

With the possible exception of Delmonte Lane, discussed elsewhere, Debtor does not believe that there has been any meaningful variation in the scheduled value of his property.

5.  A DESCRIPTION OF THE UNCLASSIFIED CLAIMS
      5.1 Administrative Claims
            Estimated Amount of Unpaid Professional Fees and Costs
            To date, Debtor has paid the $1,039 filing fee, and the $25,627.69 in WLC fees

WHITE LAW
CHARTERED
LAWYERS
OTH CENTURY BLDG.
I35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

and costs approved by the Bankruptcy Court by order entered 12/13/10 (Docket 79) approving WLC's as interim fee application for fees and costs incurred through September 30, 2010. Since that time (through 1/27/11) counsel for Debtor has incurred attorney fees of $13,248.50 and costs of $330.60 for a total of $13,579.10 incurred through January 31, 2011, which have not been subject to fee application and which remain unpaid. In addition, counsel estimates additional fees and costs of $5,000.00 will be incurred through the Confirmation Date.

To date, Debtor has paid his court-approved CPA, Randy Barton, $4,000 in fees and costs, and estimates that Mr. Barton has incurred or will incur additional fees and costs in the amount of $1,000 through the Confirmation Date.

<u>Administrative Claimants Who Agree to Defer Payment</u>

None.

5.2 <u>Priority Claims</u>

*Estimated Priority Claims*

Table: Priority Creditors

| CREDITOR | Allowed | Property | Filed Claim |
|---|---|---|---|
| IRS | | | $562,813.01 for years 2005-2009 (Claim 14 )* |
| Washoe County Treasurer | $74,518.60 | Gateway Inn (Parcel 00616601) | $74,518.60 (Claim 13) |
| City of Reno Sewer use fee | $13,000.00 | Gateway Inn | $2,678.01 (Claim 24 and duplicate claim 26) |
| Washoe County Treasurer | $2,473.08 | Verdi land Parcel 03807444 | $2,473.08 (Claim 12) |
| City of Reno Sewer Use fee | disputed-has been transferred to property taxes | 7th St. Duplex | $1,142.49 (Claim 25 and duplicate Claim 23) |
| Churchill County Treasurer | $2,276.00 | 07-791-08 | |
| Churchill County Treasurer | $1,981.00 | 07-791-11 | |
| TOTAL | $94,248.68 | $ | $643,625.16 |

* Debtor expects the IRS claim to be amended and that the allowed IRS claim will not exceed $25,000.

<u>6 A DESCRIPTION OF CLAIMS BY CLASS INCLUDING AN ESTIMATE OF THE AMOUNTS OF CLAIMS IN EACH CLASS AS REFLECTED IN THE SCHEDULES; AND PROOFS OF CLAIM ON FILE, OR AS OTHERWISE AGREED</u>

6.1 <u>Secured Claims.</u>

**Claims secured by Gateway Inn** (1255-1275 Stardust St., Reno) (Property not owned by Debtor. Therefore this Plan is also approved by EasyMark, LLC, the owner.)

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

Γ (775) 322-8000
Ϝ (775) 322-1228

Class 1 (Dorothy Pabst) $1,070,000.00 (Claim 29)

**Claims secured by 7 St. Duplex, Reno**

Class 2 (Pura) ($31,729.07) (Senior mortgage on duplex - Claim 15)

Class 3 (Bank of America) $194,691.58 (Junior Mortgage on Duplex - Claim 18 )

**Claims secured by Debtor's Residence** (2370 Delmonte Lane, Reno)

Class 4 (SunTrust Mortgage, Inc) $1,004,950.62 (Claim 16 )

**Claims secured by 871-879 McLean St., Fallon, NV (Embers Mobile Home Park)**

Class 5 (Harvest Time Foundation) $737,683.31 (Claim 27)

**Claims secured by 845 McLean/840 Cleveland, Fallon, NV**

Class 6 (Phillip Hosking, Trustee of the Hosking Family Trust) $200,000 (scheduled - no claim filed)

**Claims secured by 325 Circle Dr., Reno**

Class 7 (Chase Mortgage Company) $173,688.44 (Claim 17)

6.2 Unsecured Claims

**General Unsecured Claims**

Class 8 (Unsecured Non-priority Claims)

**Equity**

Class 9 (Debtor's interest)

6.3 Statement of Impairment.

There will be no impairment of Claims under this Plan in Class 9. All other Classes are impaired.

6.4 Claims Bar Date:

The Claims Bar Date in this case was August 22, 2010. However, for governmental units, the Claims Bar Date was October 12, 2010.

6.5 Disputed Claims and Actions Taken or to be Taken to Liquidate Them

Unless amended, Debtor plans to object to the IRS Claim of $562,813.01 for the years 2005-2009, of which $159,426.96 is filed as secured and $403,386.05 as priority. As shown in his tax filings with the court, as prepared by his CPA, Randy Barton, Debtor has no tax liability for years 2007, 2008 and 2009 due to the huge losses he incurred during these 3 years that led him to Bankruptcy. As for the year 2006, his Amended return filed in October 2010 shows that he owes only $24,315.00 which will be paid in the plan over a 60-month period beginning on the effective date of the Plan. The Amended return of 2005 shows that he is owed a refund of $10,878.00, which, unless set-off by the IRS, will be used to put his assets back into operation by repairing and re-renting his rental units at 2370 Delmonte Lane, Reno, NV, at 840-870 Cleveland, and 845-871 McLean in Fallon, NV.

Debtor will seek to avoid any statutory liens or judgments which impair any exempt interest in Debtor's property properly claimed as exempt on any original or amended schedule. Without limitation, Debtor intends to avoid the $67,000 Fallon judgment (Case No. CV-09-0212), filed 1/29/2009 by Harvest Time Foundation as part of its $737,683.31 secured Claim (Claim 24).

As indicated elsewhere in this Disclosure Statement, Debtor intends to maintain an action for damages against U.S. bank for wrongful pre-petition foreclosure of its claimed mortgage on Debtor's Delmonte residence.

6.6 Description and Approximate Size of the General Unsecured Creditor Class

Schedule F, including the 3 creditors added on May 21, 2010, shows 14 creditors in Class

8, none of which are listed as contingent, unliquidated or disputed.

6.7 Estimated Aggregate Dollar Amount of General Unsecured Claims

The Schedules filed in this case indicate that on the Petition Date, unsecured non-priority claims were $328,872.21. This amount will be increased by $1,019,326.51, being the unsecured portion of claims filed as secured claims which are in fact only partially secured due to the FMV of their security. Claims have been filed herein by general unsecured creditors in the amount of $445,364.89.

7. A SUMMARY OF THE TREATMENT OF ALLOWED UNCLASSIFIED AND CLASSIFIED CLAIMS UNDER THE PROPOSED PLAN

7.1 Definitions

Distribution Date: will be the date the Revested Debtor commences making distributions pursuant to the Plan, which date shall be the Effective Date or as soon thereafter as is reasonably practicable but in no event more than 20 days following the Effective Date.

Effective Date: will be the eleventh (11th) day following the Plan confirmation date, provided any Order of the Court confirming and approving the Plan becomes a final order prior to that time; otherwise, "Effective Date" means the next business day after the date on which the Order of the Court confirming and approving the Plan becomes a final order, unless the Debtor in his sole discretion after confirmation determine that the Effective Date shall be earlier.

Professional means any Court-approved professional providing services to the estates in the Debtors' Chapter 11 case, pursuant to Sections 327 or 1103 of the Bankruptcy Code or otherwise, and the professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

Professional Fee Claim means an administrative claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date.

7.2 Generally.

7.2.1 Internal Revenue Service and Other Taxing Bodies with Unclassified Priority Claims.

Taxing bodies, including but not limited to the Internal Revenue Service, entitled to priority in accordance with the Bankruptcy Code (as well as any such claims that are also secured by liens against Debtor will be paid in equal monthly installments as follows:
- IRS: $400.00 per month (assumes debt of $24,000 as of the Effective Date)
- Property taxes (Washoe County): $1,250 per month
- Sewer Use Fees (City of Reno): $220 per month
- Property Taxes (Churchill County): $70 per month

including any required interest for a period of sixty (60) months from the Petition Date. Priority tax claimants whose claims are partially secured by liens (a) retain such liens until such time as the portion of the claims secured by liens are paid in full and (b) apply monthly installment payments provided for under the Plan first to the secured portion of such claims. Payment of priority claims shall commence on the Distribution Date. In no event will the percentage payment on such claims be paid at a rate less than the percentage rate of payment to general unsecured creditors, or in a manner less favorable than the most favored nonpriority unsecured claim provided for by the plan.

7.2.2 Administrative Claims Each holder of an allowed administrative claim (excluding any holder that agrees to different treatment), including any administrative claim for

WHITE LAW
CHARTERED
LAWYERS
OTH CENTURY BLDG.
35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

15

real estate and personal property taxes due and payable as of the Effective Date, will receive the amount allowed for its administrative claim, in cash, in full satisfaction, settlement, release, extinguishment and discharge of such claim, to be paid on the Effective Date; provided, however, that allowed administrative claims representing post-petition liabilities, whether or not incurred by law or under contract, will be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating hereto.

       <u>Professional Fee Claims.</u>  Allowed Professional Fee Claims shall be paid, in cash, on the Effective Date from the Plan.

       7.3 Classified Claims

       A summary of the Plan's treatment of Secured claims is attached hereto as Exhibit C.

a.  Class 1 (Pabst):

       The Class 1 claim is fully secured by the Gateway Inn. The Class 1 Claim shall be paid in full by way of a new note, made by EasyMark, LLC , which has consented to Debtor's Plan, secured by the existing Pabst mortgage, in the principal amount of $1,030,000.00, which new note will take the place of the existing note.  This new note will be also be signed by all members of EasyMark, LLC, individually.  It will bear simple annual interest of 8%.  It shall be paid as follows: consecutive monthly interest-only payments of $6,900 each, beginning on the 1st day of the first month after the Effective Date and continuing on the first of each month thereafter until March 30, 2012.  Any payment not received by the 11th day of the month will be subject to late charges as contained in the original note.  The new note shall provide that beginning April 1, 2012,  interest will be at eight percent (8%) simple annual and monthly payments will be $10,212.00 per month, which amount is sufficient to fully amortize the note in 15 years from April 1, 2012.  The new note shall be due in full 10 years from the date of the first Plan payment. Until the Class 1 claim is paid in full, Pabst, shall retain its lien on assets to the same extent and priority as such liens existed on the Petition Date.

       The Class 1 secured claim is impaired under the Plan and the holder shall be entitled to vote to accept or reject the Plan.

b.  Class 2 (Pura):

       In respect to the 7th St. Duplex, Pura's claim is fully secured. Pura shall be allowed a secured claim of $32,000.00.  This amount shall bear interest at six percent (6%) per annum, fully amortized over 5 years from the Effective Date, carrying monthly payments of $700 per month, beginning on the Effective Date.  On the Effective Date, Debtor shall provide Pura with a new note containing these terms, secured by the existing Pura mortgage.  Pura shall retain her lien on the Debtor's 7th St. Duplex until her claim is paid in full.  Except as otherwise provided herein, all terms in the existing Pura note will be incorporated into the new note.

       Class 2 claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

c.  Class 3:  Bank of America

       Bank of America shall have a Class 3 secured  claim of $118,000.00, also secured by Debtor's 7th St. Duplex. The remainder of its claim of $76,691.58 shall become part of Class 8 unsecured claims.  This is necessitated by the drop in value of the Duplex to its present FMV of $150,000.  B of A's Class 4 claim shall bear simple interest of 3.75% per annum, and shall be fully amortized over 15 years, by way of monthly payments of $500.00 per month.  The first such monthly payment shall be due on the Effective date and consecutively on each month thereafter until the Class 4 claim is paid in full.  A new note containing these terms will be prepared and supplied to B of A on the Effective Date The existing note shall no longer have any

WHITE LAW
CHARTERED
LAWYERS
OTH CENTURY BLDG.
35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

force or effect, provided however that except as set forth above, B of A's new Class 4 note shall contain all of the terms in B of A's existing note. B of A shall retain its security until its Class 3 claim is paid in full.

Class 3 claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**d.  Class 4: (SunTrust Mortgage)**

In respect of the 9/1/2005 $900,000 (original amount) loan of SunTrust Mortgage secured by a lien on Debtor's real property, 2370 Delmonte Lane, Reno, Sun Trust Mortgage, secured by a senior lien on 2370 Delmonte Lane, shall be allowed a Secured Claim in the amount of $675,000, which Class 4 Secured Claim shall be paid, including interest at the rate of five (5%) percent per annum in consecutive monthly payments of $3,623.55 per month, commencing on the Effective Date and the first (1st) day of each month thereafter until the Class 4 Secured Claim is paid in full. The Class 4 Claim shall be secured by the same collateral (with the same priority) as originally secured the SunTrust Mortgage Claim. Upon payment in full to the Class 4 Secured Claim, SunTrust shall release its lien on Debtor's Delmonte Lane home. Any amount due SunTrust in excess of its Allowed Class 4 Secured Claim shall be a General Unsecured Claim.

Class 4 Claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**e.  Class 5 (Harvest Time Foundation).**

Harvest Time shall have a secured Class 5 Claim for $200,000, being the Fair Market Value of its security. The remainder of its claim shall be paid as are other general unsecured claims. Debtor shall issue a new promissory note to Harvest Time, which new note shall take the place of any existing note. The unpaid principal balance of new note shall be paid in full on the first day of the fifth year following the Effective Date of the Plan. The new note shall call for consecutive monthly interest-only payment at a simple interest of four percent (4%) per annum of $666.67 per month, until the unpaid principal balance of this note is paid in full. The first monthly payment shall be due on the Effective Date.  Harvest Time's existing mortgage shall remain as security for this new note.

Class 5 claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**f.  Class 6 (Corolla)**

Ronald Corolla shall have a secured Class 6 Claim for $200,000, being the unpaid principal balance of his note. Debtor shall issue a new promissory note to Corolla, which new note shall replace Debtor's existing note. The new note shall be paid in full on the first day of the fifth year following the Effective Date of the Plan. The new note shall call for consecutive monthly interest only payments (simple interest at six percent (6%) per annum) of $1,000.00 per month until the unpaid principal balance is paid in full.  Corona's existing mortgage shall remain as security for this new note.

Class 6 claim is impaired under the Plan and accordingly shall be entitled to vote on the Plan.

**g.  Class 7 (Chase Mortgage)**

Chase owns a $173,688.44 note secured by senior lien on Debtor's former residence, 325 Circle Dr., Reno. NV.  Chase's rights and obligations are not affected by Debtor's Plan, except that Debtor's obligation to pay any unsecured portion of the Chase claim is discharged. This

WHITE LAW
CHARTERED
LAWYERS
ITH CENTURY BLDG
15 W FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

17

home was awarded to Debtor's ex-wife in Debtor's divorce, some 10 years ago. Debtor estimates its FMV at $250,000.00, far in excess of the unpaid balance of the Chase note. The Court has terminated the automatic stay and Chase may foreclose on the property at any time.

Class 7 claim is impaired under the Plan and accordingly, shall be entitled to vote on the Plan.

h. Class 8 (Allowed General Unsecured Claims)

Allowed non-priority general unsecured claims against Debtor not otherwise classified under the Plan ("Class 8 Claims"), will receive as a minimum an amount equal to Debtor's projected earnings and profits for the five (5) year period beginning on the Effective Date as is necessary to fund this plan and will in no event be paid less than ten percent (10%) and up to forty percent (40%) of their respective Allowed Claims (provided however that Debtor does not default on payment to General Unsecured Creditors, in which case, 100% of Allowed General Unsecured Claims shall become immediately due and payable).

If General Unsecured Creditors are paid at least 10% of the amount of their respective Allowed Claims within one year of the Effective Date, no additional payments will be due and owing to General Unsecured Creditors on account of their respective Allowed Claims, to wit: a 10% payment within the first 12 months after the Effective Date will constitute full and final satisfaction of Allowed General Unsecured Claims.

If General Unsecured Creditors are paid at least 20% of the amount of their respective Allowed Claims within two years of the Effective Date, no additional payments will be due and owing to General Unsecured Creditors on account of their respective Allowed Claims, to wit: a 20% payment within the first 24 months after the Effective Date will constitute full and final satisfaction of Allowed General Unsecured Claims.

If General Unsecured Creditors are paid at least 30% of the amount of their respective Allowed Claims within three years of the Effective Date, no additional payments will be due and owing to General Unsecured Creditors on account of their respective Allowed Claims, to wit: a 30% payment within the first 36 months after the Effective Date will constitute full and final satisfaction of Allowed General Unsecured Claims.

If General Unsecured Creditors are not paid at least 30% of the amount of their respective Allowed Claims within three years of the Effective Date, Debtor shall on the first day of the 37th month after the Effective Date, begin paying $2,000.00 per month, to be distributed pro-rata among all Allowed General Unsecured Claims until each respective General Unsecured Creditor has received 40% of its respective Allowed Claim, provided however, that if Debtor is more than 15 days late with any such $2,000.00 monthly payment, Debtor shall liquidate RLL, LLC, R & L Nevada Holdings, A & B Logistics, Butte City California Property, Fallon properties and Baylocq Properties, LLC and divide all proceeds pro-rata among the Allowed General Unsecured Claims, which proceeds will constitute full and final satisfaction of Allowed General Unsecured Claims. Liquidation shall be accomplished by listing the properties or interests to be liquidated with Dick Johnson, Broker, the broker with The Johnson Group, Brokers, 10631 Professional Circle, Reno, NV. Any General Unsecured Creditor holding an Allowed Claim who believes that the property is not being properly liquidated by Mr. Johnson may petition the Bankruptcy Court, following 10-day notice to Debtor, which Court hereby reserves jurisdiction to grant any relief it then deems appropriate under the circumstances.

General Unsecured Claims shall not bear interest.

Class 8 is impaired under the Plan and entitled to vote to accept or reject the Plan.

i. Class 9: Debtor.

WHITE LAW
CHARTERED
LAWYERS
ᴛʜ CENTURY BLDG
15 W. FIRST STREET
ʀENO, NV 89503

(775) 322-8000
(775) 322-1228

The Class 9 holder shall retain its equity security interests (and the attendant rights) in all the Debtor's assets.

Class 9 is unimpaired under the Plan and accordingly not entitled to vote to accept or reject the Plan.

7.4  Insider Claims Identified
There are no insider claims.

7.5  Right to Early Payment.
Provided all payments are made in strict compliance with the priority provisions of the Plan and the Bankruptcy Code, the Revested Debtor may pay creditors more quickly than that which is proposed in the Plan without penalty.  Early payments may not be inconsistent with any other provision of the Plan.

8.  A SUMMARY OF THE TREATMENT OF THE EXECUTORY CONTRACTS UNDER THE PROPOSED PLAN
All executory contracts and unexpired leases which have not already been assumed or which are not assumed by the Confirmation Date pursuant to order of the Bankruptcy Court are rejected as of the Confirmation Date.  The Plan confirmation order will constitute an order of the Court approving such rejections as of the confirmation date.  **To the extent that any non-Debtor party to an executory contract asserts a claim for cure, such cure claim shall be filed with the Bankruptcy Court at least five (5) business days prior to the Plan confirmation hearing, or such cure claim shall forever be barred.**  All timely-filed cure claims shall be deemed disputed for all purposes relating to the Plan.  The Debtor until the Effective Date, and the Revested Debtor thereafter shall negotiate in good faith with such cure claimant for a period of thirty (30) days and in the event that a consensual treatment of such alleged cure claim cannot be reached, the Revested Debtor shall file an objection to any such cure claim.

Damages Upon Rejection.  **The Court will determine the dollar amount, if any, of the claim of any entity seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such entity must file a proof of claim for such damages with the Court on or before thirty (30) calendar days following the confirmation date.**  To the extent any such claim is allowed by the Court by final order, such claim will become, and will be treated for all purposes under the Plan as, a general unsecured claim, and the holder thereof will receive distributions as a holder of an allowed claim in such class pursuant to the Plan. The Plan will constitute notice to entities which may assert a claim for damages from the rejection of an executory contract or expired lease of this bar date for filing a proof of claim in connection therewith; provided, however, that the Debtor has an obligation to notify such entities that confirmation has occurred.

Rights Upon Rejection.  To the extent any rejected executory contract or unexpired lease by its terms provides any entity other than the Debtor with any options upon "termination", such options shall not be enforceable by such other entity as a result of the rejection of such executory contract or unexpired lease.  Rejection of any executory contract or unexpired lease shall not affect the rights of the Debtor that arise upon termination pursuant to the terms of such executory contract or unexpired lease.

9.  A LIQUIDATION ANALYSIS
9.1 Value of Assets if Sold at Auction Upon Commercially Reasonable Notice (Chapter 7

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

Evaluation)

In a hypothetical chapter seven, the Trustee would liquidate Debtor's assets.

As shown in the cash flow schedule of Debtor's properties and the Gateway Inn (See Exhibit B), they all hit their lowest levels in 2010. It is through Mr. Baylocq's sweat equity and will to survive that these properties have cut expenses, are being repaired and revenues are stabilizing and growing. Any sale at this time would have to use the 2010 revenue and expense numbers which hit bottom at the time of filing for bankruptcy protection on April 15th, 2010. Mr. Baylocq has since been able to make his adequate protection payments on the Washoe County Properties and is working on restoring service to the Churchill County properties.

The liquidation value of Debtor's business interests is now set forth. A statement of assumptions relied upon is included with the discussion of each asset's liquidation value:

Gateway Inn, Reno

If the Gateway was liquidated it would bring less than one million dollars because of two problems. The revenue generated by the property is the lowest ever experienced by the Debtor in the 13 years he has operated the property and the expenses are artificially low due to Mr. Baylocq's performing most of the work himself and living 24/7 on the property to cut expenses and survive this economic downturn.

The second problem is that Mr. Baylocq owns only 50% of the Gateway Inn. This small partnership share would be worthless due to priority secured claims of the Washoe County Treasurer and Reno sewer fees owed. The fully-secured 1st note would only receive 75% of full payment and all other creditors would receive nothing.

2370 Delmonte, Reno

Though it is his homestead, Debtor has not at this time claimed this property as exempt, but plans to amend his Schedule C to so claim it as such, in the event it appears that there is equity or other good reason. The liquidation of 2370 Delmonte would deprive the Debtor of his residence and homestead. This property can pay for itself through rental income at the present day lower interest rates and secured amounts. The Debtor has been severely damaged by an illegal foreclosure on the property in 2009 and will be seeking legal compensation for this act. This property provides a home for the Debtor and would provide SunTrust Mortgage with more compensation than if sold "as is". The property suffers from storm damage which needs to be repaired and is the subject of an insurance claim by the Debtor in which SunTrust is not cooperating. The property is worth $600,000.00 in repaired condition, which Debtor will restore it to. An "as is" sale in present condition would bring a value of less than $500,000.00 due to age and difficulties related to the well and septic system and the need for expert, hands-on knowledge.

1490-92 7th Street, Reno

This duplex's liquidation value would provide even less money to the Bank of America as a secured creditor. As there is no doubt about the fully secured position of the first note, due to the Puras for $32,000.00, Bank of America is owed $194,000.00 which only $118,000.00 is secured by present value. Whereas properties are presently selling at the cheapest prices in 20 years, Bank of America will benefit better with a fully-restored secured note of $118,000.00 which the Debtor can service and receive benefits from $76,000.00 unsecured claim than to sell now and receive nothing on it.

8291/8293 Hwy 162, Butte City, Ca

The Butte City, Ca property is again a 50% partnership share. The liquidation of a minority share would yield less than the $37,500 value. The property does provide the

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG.
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

bankruptcy estate with $200-$300 a month of clear cash flow to service debts of the estate.

### 840 Cleveland / 845 McLean, Fallon, NV

The two Churchill County properties will require an experienced and creative owner to either annex or solve the water problem created in the 1/4/2011 District Court ruling. The Debtor is in possession of plans, surveys and engineering calculations paid for in the past for development of the property. A liquidation of these two properties would bring less than $100,000.00 land value since the potential buyer would have no obtainable source of water as they presently stand. These properties, for any kind of long term success, must have a new plan implemented and devised for future long term development gains of which the property was purchased to accomplish. The Debtor's other three free and clear properties also must be utilized in a similar plan to provide future cash to pay unsecured claims and restore the Debtor to the long term hope of returning to real estate development, his occupation for the last 25 yrs. The rental value of existing houses when returned to service will service the reduced secured debt amounts on a short 5-year term until this Plan can be down-sized and revised with future earnings available to pay the large unsecured claims class.

### RLL,LLC

RLL, LLC has all its assets for sale and liquidation already. It is cheaper to allow the Debtor to continue this process than to turn it over to a Trustee and increase the sales cost.

### R & L Nevada

R & L Nevada Holdings is stabilizing its expenses and will need to raise its rental income before any liquid cash can be obtained from the sale of its building.

### A & B Logistics

A & B Logistics' core value is on its exclusive license from the Nevada TSA to operate in North Lake Tahoe and the complicated and long licensing process. The Debtor also only owns a 50% minority ownership share. The Debtor is presently licensed to own and operate the company and will benefit from future profits. Liquidation will bring very little cash.

### Baylocq Properties LLC

Baylocq Properties LLC presently owns land for development. As stated above, the Debtor has 25 years of experience in this field and is uniquely familiar with these properties for future development and maximum future gains to retire unsecured claims. Liquidation would bring very little cash at this time to pay the large unsecured claims class.

### 9.2    Comparison to Value of Debtor's Business as a Going Concern

Based on the foregoing,

Debtor's assets which are free of any security interest are minimal to non-existent. The liquidation value of Debtor's property, considered as a whole, is less than $2,000,000. The total filed secured claims is approximately $2,270,000. Therefore, after payment of total secured claims, the value of property available to priority and unsecured creditors would be approximately zero, minus allowed administrative expenses.

On the other hand, using the same value for secured debt, the going concern value of Debtor's current assets is approximately $2,974,000. 00.

## 10.  HOW DEBTOR INTENDS TO MAKE PROPOSED PAYMENTS

### 10.1 Plan Funding (By Ongoing Future Operating Cash Flow)

Roger Baylocq, as the Revested Debtor, will make all Plan payments in cash from operational revenues. Attached hereto as Exhibit B is a projection of Mr. Baylocq's cash flows which the Debtors assert demonstrates the feasibility of the Plan, provided however that in no

WHITE LAW
CHARTERED
LAWYERS
ITH CENTURY BLDG
5 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

21

event will payments to General Unsecured Creditors under the Plan be less than five (5) years of Debtor's projected earnings, as more specifically set forth above and in the Plan.

10.2 Cash Requirements at Effective Date of Plan

In addition to cash normally needed for ongoing operations, Debtor estimates that he will need the following cash on confirmation or shortly thereafter.

Table 10.1 (Effective Date Cash Required for the Distribution Date)

| | |
|---|---|
| First monthly payment on Gateway note (Pabst) | $6,900.00 |
| First monthly payment on 7th St. Duplex first mortgage (Pura) | $700.00 |
| First monthly payment on 7th St. Duplex 2nd Mortgage (Bank of America) | $500.00 |
| First monthly payment on Debtor's home (SunTrust) | $2,700.00 |
| First monthly payment on Fallon Property APN 07-791-08 (Harvest Time) | $667.00 |
| First monthly payment on Fallon Property APN 07-791-11 (Corolla) | $1,000.00 |
| First monthly payment to the four priority unsecured claims | $1,940.00 |
| Administrative claimants (approximate) | $10,000.00 |
| Effective Date payment to general unsecured claimants | $0 |
| TOTAL: | $24,407.00 |

10.3  Projections Through End of Plan Payment Period

See Exhibit B.

The Reno area economic slump has reached the bottom and will slowly improve over the term of Debtor's Plan.

The Revested Debtor will be able to expand his real estate development operation.

Churchill County allows rental of 5 units in Fallon.

Gross Projected revenues are as follows:

| SOURCE | MONTHLY ESTIMATE $ |
|---|---|
| Gateway Inn | 33,000.00 |
| 7th St. Duplex | 1,500.00 |
| Delmonte | 3,200.00 |
| Fallon (both) | 3,000.00 |
| Butte City, CA | 300.00 |
| TOTAL | 40,900.00 |

10.4 Debtor's assumptions are realistic.

Debtor believes his projected revenues are reasonable.  Expenses (historical, present and projected cash flow analysis) are shown in Exhibit B.

10. 5 Risk Factors

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
35 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

22

The major risk factors under Debtor's Plan are as follows.

<u>Significant competition from entities with greater resources</u>.

The Gateway Inn is a 100-room motel with an attached restaurant. The vacancy factor of late has been 50%. Approximately 100% of the tenants are weeklys or monthlys. The restaurant is closed and has been unable to pay normal rent. The Gateway competes with other motels which are closer to Reno's downtown core. Debtor's current capitalization does not allow for any unexpected circumstances that the Revested Debtor may face. If significant repairs become necessary, or vacancy rates drop further, the Revested Debtor may have to cease operating the Gateway due to insufficient capitalization to address such contingencies.

Payments to General Unsecured Creditors under the Plan assume that Debtor will be able to rent 5 units in Fallon which, in turn, depends on Debtor being able to find and utilize a reliable, safe, source of water.

## 11.  DISCLOSURE OF POST-PETITION CONTROL

Upon emergence, the Revested Debtor will continue to operate the Gateway Inn and all its other assets. All discharge provisions under this Plan inure to the benefit of the Revested Debtor.

Roger Baylocq will continue as sole owner of all of Debtor's assets. His salary will not exceed $3,000 per month during the term of the plan, being the amount remaining after his disposable income is devoted to plan payments as provided in the plan.

## 12. PLAN VOTING RIGHTS

In order for the Debtor's Plan to be confirmed, each impaired class of claims or interests must accept the Plan, except as set forth below. In order for the Plan to be deemed accepted, a majority in number and two-thirds in dollar amount of the claims, of each class of creditors impaired under the Plan of those that actually vote must vote for acceptance of the Plan. Holders of claims who fail to vote are not counted as either accepting or rejecting the Plan. Classes of claims that are not "impaired" under a Plan are deemed to have accepted the Plan. Acceptances of the Plan will be solicited only from those persons who hold claims or interests in impaired classes. A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturities, or by full payment in cash.

## 13.  CONFIRMATION OVER OBJECTION OF DISSENTING CLASS

The Bankruptcy Code provides for confirmation of a Plan even if the Plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. These "cram-down" provisions for confirmation of a Plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in Section 1129(b) of the Bankruptcy Code. If a class of unsecured claims rejects the Plan, it may still be confirmed so long as the Plan provides that (i) each holder of a claim included in the rejecting class receive or retain on account of that claim property which has a value, as of the Effective Date, equal to the allowed amount of such claim; or that (ii) the holder of any claim or interest that is junior to the claims of such class, other than the Debtor, will not receive or retain on account of such junior claim or interest any property at all.

If a class of secured claims rejects the Plan, it may still be confirmed so long as the Plan provides (i) the holders of such claims retain the lien securing such claim; (ii) the holders of such

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

claims receive on account of such claims deferred cash payments totaling at least the allowed amount of such claims, of a value, as of the Effective Date of the Plan, of at least the value of such claimant's interest in the estate's interest in such property; (iii) for the sale of the property in accordance with Sec. 1129(b)(2)(A)(ii); or (iv) for the realization by such claimants of the indubitable equivalent of the claim.

## 14.  OTHER IMPORTANT TERMS AND CONDITIONS OF THE PLAN.

### 14.1 Ongoing Reporting Requirements of the Revested Debtor

The Revested Debtor shall file a quarterly report in the form prescribed by the United Sates Trustee until the entry of a final decree. In addition, Debtor shall file such other reports as are necessary or as the court orders. See 11 U.S.C. §1106(a)(7). After the estate is fully administered, Debtor shall file a final account and move for a final decree. See 11 U.S.C. §§ 704(9), 1106(a)(1), 1107(a), F.R.B.P. 3022.

### 14.2 Limitations on Revested Debtor Payments or Distributions to Roger Baylocq

Pending payment in full of all general unsecured claims pursuant to the Plan, the Revested Debtor shall not make any payments or distributions of any kind to Roger Baylocq which exceed $3,000 in any one month.

### 14.3 Default Remedies

#### Event of Payment Default.

Except as otherwise provided for herein and without limiting the rights of any creditor or party-in-interest, an "Event of a Payment Default" means any failure on the part of the Revested Debtor to pay fully when due any payment required to be made in accordance with the provisions of the Plan that remains uncured for a period of ten (10) days after written notice of such failure of performance or violation from the holder of any allowed Claim is received by the Revested Debtor's counsel, John White.

#### Event of Non-Monetary Default.

Except as otherwise provided herein and without limiting the rights of any creditor or party-in-interest, an "Event of a Non-Monetary Default" means any failure on the part of the Revested Debtor to comply with any provision of its Plan that remains uncured for a period of ten (10) days after written notice of such failure of performance or violation from the holder of an Allowed Claim is received by John White, counsel for the Revested Debtor.

#### Remedies Upon an Event of Payment Default or Non-Monetary Default

Without limiting the rights under law or equity of any creditor, in the Event of a Payment Default or Non-Monetary Default, (i) all payments due general unsecured creditors under the Plan shall be immediately accelerated and (ii) the Revested Debtor must immediately list his assets for sale with a broker authorized to sell such asset(s) under applicable State law.   A sale mandated as a result of an Event of a Payment Default or an Event of Non-Monetary Default shall be subject to Bankruptcy Court approval following notice and a hearing.  Any sale will be subject to higher and better offers with a reasonable opportunity to bid.  The Bankruptcy Court shall retain jurisdiction of the Plan and its implementation until all payments due to general unsecured creditors are paid in full.

#### Alternative Remedy of Secured Creditors

Notwithstanding the default provisions described above, in the event a monthly payment due a secured creditor with an Allowed Secured Claim is more than 10 days late (i.e. if the payment is not made by the 15th of any given month), the secured creditor, without further order from the Court, may exercise its state law right to foreclose or, in its sole discretion, the secured creditor may have and exercise the same remedies as the holder of an Allowed Claim under the above-described default provisions.

### 14.4 Pre-petition Causes of Action

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228

24

All pre-petition date causes of action of the Debtor shall re-vest in the Revested Debtor as of the Effective Date.

15 DISCLAIMER

No representations concerning the Debtor is authorized by the Debtor except as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained herein have not been authorized and should not be relied upon by you in making your decision, and such additional representations and inducements should be reported to counsel for the Debtor, who in turn should deliver such information to the Court for such action as may be deemed appropriate. The information contained herein has not been subjected to a certified audit. The records kept by the Debtor and other information relied on herein are dependent upon investigations and accounting performed by the Debtors\ and others employed by the Debtor. The Debtor is unable to warrant that the information contained herein is without inaccuracy, although a great effort has been made to be accurate, and the Debtor believes that the information contained herein is, in fact, accurate.

Dated: May 31, 2011.

ROGER PIERRE BAYLOCQ

Submitted by:

White Law Chartered

By John White, Esq.

This Plan described in this Disclosure Statement is approved by Easymark, LLC, as to each, every and all provisions relating to the Gateway Inn, or any other property titled in its name.

Roger Baylocq,
Managing Member.
EasyMark, LLC.

WHITE LAW
CHARTERED
LAWYERS
0TH CENTURY BLDG.
I35 W. FIRST STREET
RENO, NV 89503

T (775) 322-8000
F (775) 322-1228

25

Index of Exhibits

Exhibit A                    Debtor's May 31, 2011 Plan of Reorganization

Exhibit B                    Historical and Projected Financial Information

Exhibit C                    Summary of Treatment of Secured Claims

Exhibit D                    Delmonte Renovation Plan

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WHITE LAW
CHARTERED
LAWYERS
7TH CENTURY BLDG
15 W. FIRST STREET
RENO, NV 89503

(775) 322-8000
(775) 322-1228